IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

WILLIAM RAY SPRAY, JR., and )
RHONDA JEAN SPRAY, Individually and )
as Personal Representatives of the Estate Of )
Sindi Lucille Spray, DECEASED, )
  )
           Plaintiff, )
v. )
  )    Case No. CIV-20-1252-JD
1. BOARD OF COUNTY COMMISSIONERS )
OF OKLAHOMA COUNTY, In its Official )
Capacity as Governing Body of the County )
of Oklahoma County, )
  )
  )
          Defendant. )

## AMENDED COMPLAINT

COME NOW the plaintiffs, William Ray Spray, Jr., and Rhonda Jean Spray, Individually and as Personal Representatives of the Estate of Sindi Lucille Spray, Deceased, by and through their attorney, Danny K. Shadid, ***with the knowledge and consent of defendant's counsel***, and for their Amended Complaint against the defendant, Board of County Commissioners of Oklahoma County, allege and state as follows:

## JURISDICTION, VENUE AND PARTIES

1.    The plaintiffs are husband and wife and the parents of Sindi Lucille Spray, Deceased. They are also the duly appointed Personal Representatives of the Estate of Sindi Lucille Spray, Deceased, and was so appointed in the case styled *In the Matter of the Estate of Sindi Lucille Spray, Deceased*, District Court of Pottawatomie County, Case No. PB-2019-17.

2.      The plaintiffs are citizens of Hughes County, Oklahoma.  Sindi Lucille Spray, Deceased, was a citizen of Cleveland County, within the Western District of Oklahoma.

3.      The plaintiffs bring this action individually as the parents of Sindi Lucille Spray, and in their capacities as Personal Representatives of the Estate of Sindi Lucille Spray, Deceased.

4.      The County Sheriff is, by Oklahoma law, the "final policymaker" for County jails. Okla. Stat. tit. 19, §513; Okla. Stat. tit. 57, §47; *Chrisman v. Board of County Commissioners of Oklahoma County, et al.,* Order of September 7, 2018, W. D.  Oklahoma, Case No. CIV-17-1309-D (Doc. No. 39), at 6, n.2.

5.      Defendant Board of County Commissioners of Oklahoma County (hereafter, the **"Board"**) is the duly elected and constituted governing body of the  County of Oklahoma County, State of Oklahoma. This action is brought against the County of Oklahoma County, in the name of the Board of County Commissioners of Oklahoma County as Oklahoma law requires that an action against a County be brought in the name of the Board of County Commissioners of the respective County. Okla. Stat. tit. 19, §4.  The "County (by suit against the defendant Board) may be liable" for the actions of the County Sheriff "as a final policymaker regarding the Oklahoma County Jail." *Chrisman v. Board of County Commissioners of Oklahoma County, et al.,* Order of September 7, 2018, W. D. Oklahoma, Case No. CIV-17-1309-D (Doc. No. 39), at 6, n.2.

6.      All events and transactions giving rise to the plaintiffs' claims arose in Oklahoma County, Oklahoma, within the Western District of Oklahoma.

7.     Subject matter jurisdiction in this Court is predicated upon this Court's jurisdiction over issues involving federal questions pursuant to 28 U.S.C. §1331. In the present case, federal questions arise under U.S. Const. amend. XIV and under 42 U.S.C. §1983.

8.     This Court further has subject matter jurisdiction over the plaintiffs' state law claim pursuant to this Court's supplemental jurisdiction, as provided in 28 U.S.C. §1367, as the plaintiffs' state law claim is so related to the plaintiffs' federal claims herein as to form part of the same case and controversy.

9.     This Court has in personam jurisdiction over the parties in that, at all pertinent times, the defendant Board was and is a duly constituted political subdivision of the State of Oklahoma and performs its governmental functions within and is situated within the Western District of Oklahoma.  The defendant Board may be served and has been served with Summons in the State of Oklahoma, within the Western District of Oklahoma.

10.    Pursuant to 28 U.S.C. §1391(b)(1), venue properly lies in the Western District of Oklahoma in that the defendant Board is situated in and can be served Summons within the Western District of Oklahoma. Additionally, pursuant to 28 U.S.C. §3291(b)(2), venue properly lies in the Western District of Oklahoma in that all events that give rise to the plaintiffs' claims occurred within the Western District of Oklahoma.

11.    All of the plaintiffs' claims arose on or after December 13, 2018.

12.    The plaintiffs originally brought their claims against the County of Oklahoma

County, in the name of the defendant Board, and against other Oklahoma County entities and groups of persons employed by the County of Oklahoma County and working for the County at the Oklahoma County Jail, in an action commenced on April 3, 2020, styled *Spray v. Board of County Commissioners for Oklahoma County, et al.*, W. D. Okla., Case No. CIV-20-308-C. On July 2, 2020, the plaintiffs filed a Dismissal Without Prejudice and voluntarily dismissed the aforesaid action without prejudice to refiling (Doc. No. 22 in Case No. CIV-20-308-C).

13.     State law controls the applicable statute of limitations for federal claims that do not otherwise carry with them a designated federal statute of limitations.  42 U.S.C. §1988(a); *Wilson v. Garcia*, 471 U.S. 261 (1985); and *Owens v. Okure*, 488 U.S. 235 (1983). Inasmuch as there does not exist a federal statute of limitations pertaining to the 42 U.S.C. §1983, Oklahoma state law controls the applicable statute of limitation.  The controlling Oklahoma statute of limitations is Okla. Stat. tit. 12, §95, which provides that causes of action for personal injuries and for "injuries to the rights of another, not arising on contract," is two (2) years.  Oklahoma law also provides that an action dismissed without prejudice may be refiled within one (1) year after the dismissal. Okla. Stat. tit. 12,§100.

14.     On December 12, 2020, the plaintiffs timely refiled the present action within one (1) year from the dismissal of Case No. CIV-20-308-C, without prejudice.

15.     In accordance with the Oklahoma Governmental Tort Claim Act, Okla. Stat. tit. 51, §§151 *et seq*., the plaintiffs timely submitted their Tort Claim Notice to the Oklahoma

County Clerk on September 9, 2019, providing notice to the Board of County Commissioners of Oklahoma County, the Oklahoma County Jail and the Oklahoma County Jail Trust, within one (1) year following the tortious events, of the plaintiffs' state law tort claims. Thereafter, on December 6, 2019, the plaintiffs timely provided a second Tort Claim Notice, also within one (1) year following the tortious events, to the Oklahoma County Clerk placing the Oklahoma County Sheriff's Office, Oklahoma County Detention Center, Oklahoma County Deputies and Oklahoma County Detention officers on notice of the plaintiffs state law tort claims. Both Notices were provided pursuant to Okla. Stat. tit. 51, §156. The County of Oklahoma County, by operation of law, rejected the plaintiffs' Tort Claims by failure to approve the claims within 90 days following submission of the claims. Okla. Stat. tit. 51, §157(A). The aforesaid Tort Claim Notices were deemed rejected expired by operation of law on December 10, 2019, and March 5, 2020, respectively. Okla. Stat. tit. 51, §157(A). The plaintiffs' state law claims were timely filed, within 180 days following denial of the Tort Claims, Okla. Stat. tit. 51, §157(B), as part of plaintiffs' Complaint in Case No. CIV-20-308-C, on April 3, 2020.

16.     On April 6, 2021, the plaintiff's filed a Notice of Dismissal Without Prejudice (Doc. No. 6) as to previous defendant Armor Correctional Health Services, Inc.

17.     On April 14, 2021, the plaintiff's filed a Notice of Dismissal Without Prejudice (Doc. No. 13) as to previous defendant John Whetsel.

## NON-PARTY AGENTS AND REPRESENTATIVES OF THE COUNTY OF OKLAHOMA COUNTY AND THE DEFENDANT BOARD

18.     P.D. Taylor was the Sheriff of and for the County of Oklahoma County from March 2, 2017, through January 4, 2021. During that time, P.D. Taylor, as Sheriff and on behalf of the defendant Board and the County of Oklahoma County, was in charge of the operation of the Oklahoma County Jail, was the final policymaker for the Oklahoma County Jail and was in charge of protecting the health and safety of pretrial detainees and all inmates at the Oklahoma County Jail, including the providing of timely and adequate medical care.

19.     From 1993 through March 1, 2017, John Whetsel was the Sheriff of and for the County of Oklahoma County.  During that time, John Whetsel, as Sheriff and on behalf of the defendant Board and the County of Oklahoma County, was the final policymaker for the Oklahoma County Jail, was in charge of the operation of the Oklahoma County Jail and was in charge of protecting the health and safety of pretrial detainees and all inmates at the Oklahoma County Jail, including the providing of timely and adequate medical care.

20.     A portion of the Sheriff's duties is to maintain and operate the County Jail for and on behalf of the County of Oklahoma County and the defendant Board.

21.     The Sheriff establishes the policies, procedures, protocols, environment, culture, habits, conduct and *de facto* policies within the Oklahoma County Jail.

22.     For many years prior to July 1, 2018, and extending backward in time to at least 2014, Armor Correctional Health Services, Inc., a Florida corporation, was the provider of medical services at the Oklahoma County Jail in the capacity of a contractor and agent of the County of Oklahoma County and the defendant Board.

23.     Turn Key Health Clinics, LLC, is an Oklahoma limited liability company and was the provider of medical services at the Oklahoma County Jail from and after July 1, 2018, in the capacity of a contractor and agent of the defendant Board and the County of Oklahoma County, through the present time.

## FACTS

24.     Defendant was delivered to the Oklahoma County Jail on or about December 13, 2018, and was a pretrial detainee at that time and thereafter.

25.      During her detention at the Oklahoma County Jail,  Sindi Lucille Spray began suffering serious medical symptoms, including severe abdominal pain and burning in her chest, and began requesting and begging for medical attention from the Oklahoma County Jail Staff and Jail medical personnel.

26.     It was known to the defendant Board, Sheriff Taylor and Turn Key that Ms. Spray was addicted to Heroin and that was suffering from withdrawal from Heroin, yet she was denied a proper medical evaluation and medical care.

27.     It was well-known to the medical community, including Turn Key and the defendant's Jail medical personnel,  that Heroin use often leads to ulceration of the stomach, to duodenal ulcers and the like.

28.     Ms. Spray was never admitted to the Jail's medical unit.

29.     The defendant Board, Sheriff Taylor, the Jail detention staff and Turn Key never provided a physician to examine Ms. Spray.

30.     On one occasion, a person thought to be a nurse or other medical assistant responded to Ms. Spray's complaints of severe abdominal pain and chest burning by giving Ms. Spray some blood pressure medicine, which had nothing to do with her symptoms of severe abdominal pain and chest burning.

31.     The administration and prescribing of blood pressure medication to Ms. Spray for severe abdominal pain and chest burning, without her ever being seen by a physician and when a medical unit was on site, constitutes lack of adequate medical care, *per se,* and deliberate indifference to Ms. Spray's constitutional and civil rights as described herein.

32.     Thereafter, after being denied medical care for her severe abdominal pain and chest burning, Ms. Spray died in her cell.

33.     Ms. Spray's cell-mate saw Ms. Spray curl up in her bunk, moaning and writhing in pain.  The cell-mate fell asleep for a short while.  Upon awakening, Ms. Spray's cell-mate found Ms. Spray unresponsive on the cell floor.

34.     The cell-mate pounded on the cell door for 30 minutes in an attempt to get the attention of detention officers to attend to Ms. Spray.  No one responded during those 30 minutes.  When detention officers finally responded after 30 minutes, Ms. Spray was determined to be dead at approximately 5:15 p.m., on December 16, 2018.

35.     As a result of the inactions of the Jail detention officers and Jail medical staff, Ms. Spray suffered a perforation of a duodenal ulcer associated with her addiction to Heroin. The perforated duodenal ulcer which ultimately resulted in her death. Sindi Lucille Spray

also suffered conscious pain and suffering prior to her death as evidenced by her begging for medical attention, which was denied by Jail detention officers and medical staff.

36.    Policies, procedures, protocols, environment, culture, habits and *de facto* policies  relating to the providing of medical care to detainees in the Oklahoma County Jail were often created and/or recommended by Armor and/or Turn Key on behalf of the defendant Board, the County Sheriff, and the County of Oklahoma County. It was, at all pertinent times, the custom of the defendant Board and the custom of Sheriff John Whetsel and Sheriff P.D. Taylor, acting on behalf of the Board and the County of Oklahoma County, to delegate to Armor and Turn Key the role of developing and establishing policies, procedures, practices, customs, culture, environment, habits and *de facto* policies regarding the providing of medical care to detainees and inmates at the Oklahoma County Jail. All such policies, procedures, practices, customs, culture, environment, habits and *de facto* policies were then regularly presented to the Oklahoma County Sheriff for approval by the Sheriff, and were ultimately approved and adopted by the County Sheriff.

37.    The defendant Board and its Jail detention officers and Jail medical staff, together with John Whetsel, P.D. Taylor, Armor and Turn Key, were all, at all times, acting under color of state law.

38.    At all pertinent times, John Whetsel, P.D. Taylor, Armor and Turn Key were acting within the scope of their respective offices as Sheriffs of Oklahoma County and/or medical providers, and all under color of state law.

39.     At all pertinent times, John Whetsel and P.D. Taylor, in their official capacities as Sheriffs of Oklahoma County, acted as the policymakers over the Oklahoma County Jail on behalf of the defendant Board and the County of Oklahoma County.

40.     Turn Key, at all pertinent times, was on contract with the defendant Board to provide medical and healthcare services to pretrial detainees and inmates, including Ms. Spray, of the Oklahoma County Jail. Turn Key was, at all pertinent times, the agent of the defendant Board and the County of Oklahoma County and was, at all pertinent times, acting under color of state law.

41.     Turn Key, at all pertinent times, was the agent of the defendant Board and the County of Oklahoma County, and was tasked with providing medical and other health care services to all pretrial detainees and inmates in the Oklahoma County Jail, including Sindi Lucille Spray.

42.     Turn Key, either jointly with Sheriff P.D. Taylor and the defendant Board, or, on behalf of and defendant Board and Sheriff Taylor, formulated policies, procedures, customs, practices, environment, habits and culture pertaining to medical evaluations of jail prisoners upon intake, evaluation and treatment of prisoners medical and/or needs, which were then approved and adopted by Sheriff Taylor and the defendant Board on behalf of the County of Oklahoma County.

43.     Turn Key, at all pertinent times, exhibited deliberate indifference to the civil rights of Sindi Lucille Spray and other detainees, by its failure to obtain adequate health

histories of Jail pretrial detainees and inmates, including Ms. Spray,  in its failure to respond to the physical complaints, of pretrial detainees and inmates, including Ms. Spray, in its failure to treat and/or arrange for treatment of pretrial detainees and inmates, including Ms. Spray, and in its creation of a system whereby medical complaints of Jail prisoners, including Ms. Spray, were not made known to and/or taken seriously by the Jail medical staff.

44.    Turn Key created and/or maintained medical-related policies, procedures, customs, practices, environment, culture, habits  and atmosphere at the Oklahoma County Jail, all of which were accepted by Sheriff P.D. Taylor and the defendant Board on behalf of the County of Oklahoma County, such that pretrial detainees and inmates, including Ms. Spray, were not adequately screened for existing life-threatening conditions.

45.    Turn Key created and/or maintained medical-related policies, procedures, customs, practices, environment, culture, habits  and atmosphere at the Oklahoma County Jail, all of which were accepted by Sheriff P.D. Taylor and the defendant Board on behalf of the County of Oklahoma County, such that life sustaining treatment was denied pretrial detainees and inmates, including Ms. Spray.

46.    Turn Key, on behalf of the defendant Board, Sheriff P.D. Taylor and the County of Oklahoma County, failed to provide and /or arrange for medical treatment for Ms. Spray, including, but not limited to, evaluation and treatment of Ms. Spray's extreme abdominal pain and burning in the chest.

47.     The defendant Board, has been deliberately indifferent for well over a decade prior to the death of Sindi Spray regarding the proper funding of the Oklahoma County Jail, proper staffing of detention officers and proper staffing and funding of medical personnel at the Oklahoma County Jail. As far back as 2008, the United States Department of Justice issued a report following a five (5) year investigation of the Oklahoma County Jail. Included in that report were findings that the Jail had not been properly or sufficiently staffing the Jail detention staff.  The Department of Justice further found, *inter alia*, regarding medical care to detainees, that there had not been adequate screening of detainees for serious medical problems, that the serious medical needs of detainees were not being met, and that there was a consistent delay in providing medical services to detainees in their cell areas.

48.     Thereafter, on July 1, 2009, the defendant Board and the Oklahoma County Sheriff  entered into a "Memorandum of Understanding," whereby the defendant Board and the Oklahoma County Sheriff agreed with the United States Department of Justice to take various actions regarding approximately 62 areas of deficiency at the Oklahoma County Jail. This included insufficient remedying the then-existing situation of funding for the Jail, and insufficient staffing of Jail detention officers, promises to provide adequate medical staffing, promises to provide care for the serious medical needs of detainees, and promises to address and remedy other situations regarding inadequate medical care for detainees. By 2017 and thereafter through mid-2020, the Jail detention staff remained woefully deficient in numbers. The Jail detention staff was supposed to be approximately 620 in number but was regularly at approximately 450 in number. There were also times when the Jail detention staff dropped

below 400 in number. This was due primarily to a lack of funding provided by the defendant Board and/or other County offices.

49.     Staffing and payment of medical personnel at the Oklahoma County Jail has been deficient for many years and continues to be deficient. In 2015, Armor initiated a civil action against the defendant Board of County Commissioners as a result of the County failing to pay over $3 Million Dollars to Armor. In 2015, Judgment was entered in the aforesaid legal action in favor of Armor and against the defendant Board in the approximate amount of $3.6 Million Dollars. Armor remained unpaid on the aforesaid Judgment until October, 2017, or shortly thereafter, following issuance of the Mandate by the Oklahoma Supreme Court affirming the Judgment in favor of Armor.  *Armor v. Board, et al.,* District Court of Oklahoma County, Case No. CJ-2015-5602 (Case No. 115203 on appeal).

50.     Former Sheriff P.D. Taylor has heretofore testified under oath that the failure to pay Armor was a decision made by former Sheriff John Whetsel. Sheriff Taylor has testified under oath that Sheriff Whetsel was faced with choice of either paying Jail detention officers or paying Armor, and that Sheriff Whetsel chose to pay the detention staff instead of Armor.

51.     Sheriff  P.D. Taylor has further testified under oath that he could understand why Armor would have been very upset with the County for not paying the contractual amount due to Armor.

52.     Armor left the Oklahoma County Jail on or about July 1, 2018, and was replaced by Turn Key. Since then, the defendant Board has continued to ignore and be

deliberately indifferent to the financial needs and obligations due the County's current medical provider, *i.e.*, Turn Key. Turn Key has, in the recent past, publicly stated in writing that the County continues to falter in providing sufficient medical staff as well as Jail security staff. Turn Key has recently advised the defendant Board that unless sufficient medical and security staff are provided by the defendant Board by April 29, 2021, then Turn Key will tender its official notice to terminate its contract with the defendant Board and County effective May 31, 2021.

53.     The defendant Board's historical and continued failure to provide sufficient funding to fully staff the Jail with security personnel and to fully compensate Jail health care providers constitutes a deliberate indifference on the part of defendant Board toward the overall safety and health care needs of Jail detainees such as and including Sindi Spray.

54.     Sindi Spray was one (1) of approximately 30-40 Jail detainees/inmates who died in the Oklahoma County Jail from January 1, 2016, through the end of 2018. From approximately mid-December, 2020, through the time of filing this Amended Complaint, there have been approximately 10 deaths in the Oklahoma County Jail.

55.     The present case is one (1) of many where the Oklahoma County Jail has failed to provide timely and adequate medical care to pretrial detainees or inmates. Mr. Bruno Bermea was booked in to the Oklahoma County Jail on or about June 4, 2016. Mr. Bermea did not have functioning kidneys and had been on a regular course of kidney dialysis, at least 3-4 times per week, for many years prior thereto. Mr. Bermea's relatives repeatedly notified

the Oklahoma County Jail detention staff and medical providers (*i.e.*, Armor at the time) of Mr. Bermea's immediate need of dialysis. Dialysis was never provided to Mr. Bermea. Mr. Bermea repeatedly begged Jail staff and/or medical personnel for medical care. Medical care in the form of dialysis was never provided and, in the presence of his cell mate, Mr. Bermea was observed to be writhing in pain and agony until he died in his cell on June 7, 2016. *See Bermea v. Board of County Commissioners*, W.D. Oklahoma, Case No. CIV-18-606-R, voluntarily dismissed for other reasons.

56.     In *Chrisman v. Board of County Commissioners*, W.D. Oklahoma, Case No. CIV-2017-1309-D, currently pending before the Court, sworn testimony of Jail detention staff and documentation establish that the decedent detainee, Mr. Chrisman, had been designated to receive certain immediate health care which was never provided prior to his death (which resulted from other matters which would have never happened had the recommended health care been timely provided).

57.     Sheriff P.D. Taylor has testified under oath that there has been regularly a consistent turn over of Jail personnel largely due to a low pay scale. Sworn testimony of various jail detention officers in a different civil rights action have testified under oath that their wages range from approximately $11.00 to $13.90 per hour. Sheriff P.D. Taylor has acknowledged under oath, that such a pay scale was problematic for the Jail and makes it hard to keep Jail employees.

58.     The historical of failure of the defendant Board to pay the Jail health care provider such as Armor and the failure to satisfy the staffing required by Turn Key reflects

the defendant Board's deliberate indifference regarding the providing of timely and adequate medical care to Jail detainees such as Sindi Spray.

59.    During their tenures as Oklahoma County Sheriff, John Whetsel and P.D. Taylor created, approved and/or implemented the policies, procedures, customs, culture, environment, habits and *de facto* policies of the Oklahoma County Jail, including, but not limited to, policies, procedures, customs, culture, environment, habits and *de facto* policies relating to the training and supervision of detention officers, and the providing of medical care to prisoners.

60.    The defendant Board and Sheriff P.D. Taylor's deliberate indifference to the constitutional and civil rights of Jail detainees, including there Sindi spray, vis-s-vis the lack of timely and adequate medical care, and the deprivation of such timely and adequate medical care resulted in the death of Sindi Spray.

## COUNT I
## (Deprivation of Civil Rights)

61.    The plaintiffs hereby adopt and reallege each and every allegation set forth in Paragraph Nos.1-60, above.

62.    The defendant Board, Sheriff P.D. Taylor and Turn Key, on behalf on the County of Oklahoma County, had a duty to not deprive Sindi Lucille Spray of her of life and/or liberty interests with due process under the Fourteenth Amendment to the United States Constitution.

63.     Defendant Board is charged with the duty of administering and overseeing all governmental functions of and for the County of Oklahoma County.

64.     Among the governmental functions which the defendant Board administers and oversees is the operation of the Oklahoma County Jail.

65.     At all times while a prisoner in the Oklahoma County, Sindi Lucille Spray had life and liberty interests, protected by the Fourteenth Amendment to the United States Constitution, to be free from physical, emotional and/or psychological harm without due process of law.

66.     At all times while a pretrial detainee in the Oklahoma County Jail, Sindi Lucille Spray had a right, under the Fourteenth Amendment to the United States Constitution, to her life and had a right to not be denied her life by the defendant Board without due process of law.

67.     The defendant Board, in its official capacity, violated the civil rights of Sindi Lucille Spray. 42 U.S.C. §1983.

68.     The defendant Board, on behalf of the County of Oklahoma County, is liable for the policies and procedures at the Oklahoma County Jail, created and/or implemented by Sheriff Whetsel, and Sheriff P.D. Taylor, and for the medical-related policies and procedures created and/or implemented at the Oklahoma County Jail by Armor and Turn Key.

69.     The defendant Board, through Sheriff Whetsel, Sheriff P.D. Taylor, Armor, and/or Turn Key, maintained policies and procedures at the Oklahoma County Jail whereby

Jail detention officers were not provided adequate and proper training to attend to the medical/healthcare needs of Jail prisoners, and, in particular, those of Ms. Spray.

70.     The defendant Board, through Sheriff Whetsel, Sheriff P.D. Taylor, Armor and/or Turn Key, maintained policies, procedures, customs, practices, environment, habits and culture to not properly supervise detention officers with regard to the medical needs of Jail detainees/inmates and the medical care to be provided to Jail detainees/inmates, including Ms. Spray.

71.     The defendant Board, through Sheriff Whetsel, Sheriff P.D. Taylor,  Armor, and/or Turn Key, maintained policies, procedures, customs, practices, environment, habits and culture  to allow untrained and/or ill-trained detention officers and personnel to oversee Jail detainees/inmates and their respective medical/healthcare needs, including Sindi Lucille Spray, at and within the Oklahoma County Jail.

72.     Turn Key, at all pertinent times, was deliberately indifferent, accepted by Sheriff P.D. Taylor and the defendant Board on behalf of the County of Oklahoma County, to Ms. Spray's Fourteenth Amendment right to not be deprived of her life  and/or her liberty interests without due process of law.

73.     Turn Key's deliberate indifference toward Ms. Spray's constitutionally protected civil rights was while acting under color of state law, and was accepted by and became the deliberate indifference of Sheriff P.D. Taylor and the defendant Board on behalf of the County of Oklahoma County.

74.    The actions and/or inactions of the defendant Board, Sheriff Whetsel, Sheriff P.D. Taylor and/or Turn Key were deliberately indifferent to Sindi Lucille Spray's need for medical care in that they:

a.    Failed to know and understand the medical right of detainees in the Jail relating to the providing prompt and adequate medical treatment to Sindi Spray and/or other detainees;

b.    Failed to employ sufficient, competent medical personnel to tend to the needs of those under the custody and control of the Oklahoma County Jail, including but not limited to Sindi Lucille Spray's medical needs;

c.    Failed to perform any adequate pre-admission medical screening of Sindi Lucille Spray;

d.    Failed to perform any prompt or adequate post-admission medical screening of Sindi Lucille Spray as an alternative to pre-admission screening or, if one were performed, it was done in a grossly inadequate manner;

e.    Failed to adequately communicate Sindi Lucille Spray's medical condition between shifts, as well as failed to properly observe Sindi Lucille Spray on any type of minimum basis;

f.    Ignored Sindi Lucille Spray's repeated requests for help and medical attention for serious medical needs;

g.    Failed to adequately document Sindi Lucille Spray's condition;

h.      Failed to recognize and respond in a timely manner to Sindi Lucille Spray's medical problems.

I.      Failed to call for a physician to examine, evaluate, and provide treatment to Sindi Lucille Spray during the time she was a detainee.

j.      Failed to ensure that emergency medical treatment of detainees could be accomplished in a reasonable time frame;

k.      Failed to provide person(s) with the authority to ensure that physicians were available in both a non-emergency and emergency basis;

l.      Failed to enforce an adequate plan to respond to both non-emergency and emergency medical needs of detainees;

m.      Failed to professionally train Oklahoma County Jail detention officers with regard to observation of Jail prisoners, including Ms. Spray, in need of medical care;

n.      Failed to provide medical care to Jail prisoners, including Ms. Spray, in need of the same;

o.      Failed to hire and/or retain persons qualified to attend to and/or monitor the medical needs of Jail prisoners, including Ms. Spray;

p.      Allowed and/or created customs, practices, environment, culture, atmosphere and habits within the Oklahoma County Jail where ignoring the medical complaints and/or needs of Jail prisoners, including Sindi Lucille Spray, to

become accepted conduct, resulting in all of the aforesaid factors and/or conditions becoming the *de facto* policies and procedures at and of the Oklahoma County Jail; and

q.    Allowed and/or created customs, practices, environment, culture, atmosphere, habits and *de facto* policies within the Oklahoma County Jail, whereby Jail detention officers would be prone to ignore the medical complaints and/or needs of Jail prisoners, including Sindi Lucille Spray.

75.    The aforesaid policies, procedures, customs, practices, environment, culture habits and *defacto* policies  proximately and directly caused the aforementioned deprivation of Sindi Lucille Spray's civil rights as guaranteed by the Fourteenth Amendment to the United States Constitution, resulting in the below-listed damages suffered by Sindi Lucille Spray. 42 U.S.C. §1983.

76.    The defendant Board and Sheriff P.D. Taylor, at all pertinent times, had a duty to Sindi Lucille Spray and all other Oklahoma County Jail detainees/inmates to create, maintain and implement policies and procedures that would not violate the constitutional and civil rights of Sindi Lucille Spray and all other Jail prisoners. 42 U.S.C. §1983.

77.    The defendant Board and Sheriff P.D. Taylor, breached all of the aforesaid duties and violated the all of the aforesaid constitutional and  federal civil rights of Sindi Lucille Spray, and did so under color of state law. 42 U.S.C. §1983.

78.    Defendant Board's, Sheriff P.D. Taylor's and/or Turn Key's violations of Sindi Lucille Spray's civil rights proximately and directly caused damages to Sindi Lucille Spray,

including extreme physical damages, extreme emotional damages, economic damages and loss of life.

79.     The conduct of the defendant Board, through directly and/or indirectly Sheriff Whetsel, Sheriff P.D. Taylor, Armor and Turn Key, establishes the deliberate indifference of the defendant Board, Sheriff P.D. Taylor and Sheriff John Whetsel for the safety, physical well-being, emotional welfare, psychological welfare and lives of Oklahoma County Jail detainees/inmates, including Sindi Lucille Spray.

80.     The defendant Board, directly and/or through Sheriff Whetsel, P.D. Taylor, Armor and Turn Key, created an environment or culture within the Oklahoma County Jail, whereby ignoring and failing to attend to the medical, emotional, mental and/or psychological needs and/or conditions of Jail detainees/inmates, including Sindi Lucille Spray, became accepted and the norm, and, ultimately, through their deliberate indifference, became the *de facto* policies of the defendant Board.

WHEREFORE, the plaintiff prays the Court enter Judgment against the  defendant Board on this Count I, for actual damages in an amount in excess of $75,000.00, together with court costs, statutory interest and attorneys fees.

## COUNT II
### (State Law Claim–Deprivation of State Constitutional Rights)

81.     The plaintiffs hereby adopt and re-allege each and every allegation set forth in Paragraph Nos.1-80, above.

82.     The actions and/or inactions described herein are in direct violation of Article II, §9 of the Oklahoma Constitution and violated Sindi Spray's State constitutional rights. *Bosh v. Cherokee County Building Authority*, 2013 OK 9. The actions or inactions of defendant Board directly and/or through its representatives were done with such reckless indifference to the rights and well-being of Sindi Lucille Spray as to justify an award of punitive damages.

83.     Further, the actions and omissions set forth herein were extreme and outrageous in that they were clearly intolerable in a civilized society. These actions include intentional infliction of emotional distress to Sindi Spray and plaintiffs herein.

84.     The Constitution of the State of Oklahoma, under Article II, § 9, provides a private right of action for Sindi Spray and all other inmates who are in pre-trial custody to be free in their persons from cruel and unusual punishment, which includes protection from the denial of needed medical care while in custody. The actions of defendant Board and/or its employees and representatives/agents at the Oklahoma County Jail violated Sindi Lucille Spray's Oklahoma constitutional rights entitling plaintiffs to actual damages.

WHEREFORE, the plaintiffs pray the Court enter Judgment against defendant Board, on this Count II, for actual damages in an amount in excess of $75,000.00, and for punitive damages in an amount in excess of $75,000.00, together with court costs, statutory interest and attorneys fees.

Respectfully submitted,

s/ Danny K. Shadid
Danny K. Shadid, OBA No.8104
Of Counsel
RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS LAW FIRM
528 NW 12th Street
Oklahoma City, OK 73103
Phone: (405) 843-9909
Facsimile: (405) 842-2913
E-mail:dshadid@riggsabney.com
Attorney for Plaintiff

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of April, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Aaron Etherington, OBA#18,259
Rodney J. Heggy, OBA#4049
Assistant District Attorneys
Pierce Couch Hendrickson
320 Robert S. Kerr, Suite 505
Oklahoma City, Oklahoma 73102
Telephone: (405) 713-1600
Facsimile: (405)713-1749
rod.heggy@Oklahomacounty.org
aaron.etherington@oklahomacounty.org
Attorneys for Defendants Board of County
Commissioners

s/Danny K. Shadid
Danny K. Shadid