NO. CIV-20-1252-C

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

---

**BILL AND RHONDA SPRAY,**

**Plaintiffs,**

**v.**

**THE BOARD OF COUNTY COMMISSIONERS
OF OKLAHOMA COUNTY, et al**

**Defendants,**

---

**SPECIAL APPEARANCE AND MOTION TO DISMISS AMENDED
COMPLAINT BY DEFENDANT BOARD OF COUNTY
COMMISSIONERS OF OKLAHOMA COUNTY
WITH BRIEF IN SUPPORT**

---

**AARON ETHERINGTON, OBA # 18,259**

**Assistant District Attorney
Oklahoma County District Attorney's Office
320 Robert S. Kerr, Suite 501
Oklahoma City, OK 73102
(405) 713-1600 Phone
(405) 713-1749 Fax
aaron.etherington@oklahomacounty.org**

**Attorney for Defendant Board of County Commissioners
of Oklahoma County**

## **TABLE OF CONTENTS**

**INTRODUCTION** . . . . . . . . 1

**ARGUMENT AND AUTHORITIES** . . . . . . 3

**PROPOSITION I:**
Plaintiffs Lack Standing to Bring Any Federal or State
Law Action Against the Board of County
Commissioners. . . . . . . . . 3

  A.  No Injury is Fairly Traceable to Conduct of the Board. . . 4

  B.  Plaintiffs Lack Prudential Standing to Assert Federal
     And State Law Claims of Their Own . . . . . 10

**PROPOSITION II:**
Plaintiffs Fail to State a Claim for Relief
Under Section 1983 and, Thus, Defendant Is
Entitled to Dismissal of the Federal Claim
Pursuant to Rule 12(B)(6). . . . . . . 12

  A.  Plaintiffs Fail to Establish Any Violation of
     Decedent's Constitutional Right to Adequate
     Medical Care. . . . . . . . 12

  B.  Plaintiffs Fail to State a Plausible Claim
     That Defendant Board Had a Custom or
     Policy that Contributed to Any Violation of
     Decedent's Rights. . . . . . . 16

**PROPOSITION III:**
Defendant Retains Sovereign Immunity Over
Plaintiffs' State Law Claim and, Thus, the
Same Must Be Dismissed for Want of Subject
Matter Jurisdiction. . . . . . . . 21

  A.  There is No State Constitutional Right to
     Medical Care . . . . . . . . 22

  B.  The County Is Immune From Liability for
     Claims Arising Out of the Operation of a
     Detention Center.. . . . . . . 23

**CONCLUSION** . . . . . . . . 25

**CERTIFICATE OF SERVICE** . . . . . . 25

i

## <u>TABLE OF AUTHORITIES</u>

### Case Law

*Anderson v. Suiters*,
499 F.3d 1228 (10th Cir. 2007) . . . . . . . 12

*Archuleta v. McShan*,
897 F.2d 495 (10th Cir. 1990) . . . . . . . 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) . . . . . . . 12, 17, 18

*Barrios v. Haskell Cnty. Pub. Fac. Auth.*,
432 P.3d 233 (Okla. 2018) . . . . . . 21, 22, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) . . . . . . . . 12

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973) . . . . . . . . 11

*Board of Cnty. Comm'rs v. Brown*,
520 U.S. 397 (1997) . . . . . . . . 18

*Bosh v. Cherokee Cnty. Gov. Bldg. Auth.*,
305 P.3d 994 (Okla. 2013) . . . . . . . 22

*Bowens v. Bd. of Cnty. Comm'rs*,
No. CIV-19-314-C, 2020 WL 2892670 (W.D. Okla. June 2, 2020) . 5

*Canton v. Harris*,
489 U.S. 378 (1989) . . . . . . . . 18

*Carney v. City & Cnty. of Denver*,
534 F.3d 1269 (10th Cir. 2008) . . . . . . 17, 19

*Chambers v. City of Ada*,
894 P.2d 1068 (Okla. 1995) . . . . . . . 21

*City of St. Louis v. Prapotnik*,
485 U.S. 112 (1988) . . . . . . . . 5, 8

*Cox v. Glanz*,
800 F.3d 1231 (10th Cir. 2015) . . . . . . 15

*Doe v. Hunter,*
    796 Fed.Appx. 532 (10th Cir. 2019) .   .   .   .   .   .   4

*Dohaish v. Tooley,*
    670 F.2d 934 (10th Cir. 1982)   .   .   .   .   .   .   11

*Estate of Crowell v. Bd. of Cnty. Comm'rs,*
    237 P.3d 134 (Okla. 2010)   .   .   .   .   .   .   8, 21

*Estelle v. Gamble,*
    429 U.S. 97 (1976)   .   .   .   .   .   .   .   12, 13

*Farmer v. Brennan,*
    511 U.S. 825 (1994)   .   .   .   .   .   .   .   13

*Forest Oil Corp. v. Corporation Comm'n,*
    807 P.2d 774 (Okla. 1990)   .   .   .   .   .   .   11

*Gates v. Unified School District No. 449 of Leavenworth Cnty.,*
    996 F.2d 1035 (10th Cir. 1993)   .   .   .   .   .   16, 17

*Habecker v. Town of Estes Park,*
    518 F.3d 1217 (10th Cir. 2008)   .   .   .   .   .   4

*Henderson v. Secretary of Corrections,*
    518 F.2d 694 (10th Cir. 1975)   .   .   .   .   .   12

*Hunt v. Uphoff,*
    199 F.3d 1220 (10th Cir. 1999)   .   .   .   .   .   13

*Jantzen v. Hawkins,*
    188 F.3d 1247 (10th Cir. 1999)   .   .   .   7, 8, 9, 16, 20, 21

*Jenkins v. Wood,*
    81 F.3d 988 (10th Cir. 1996) .   .   .   .   .   .   18

*Johnson v. Conner,*
    236 P.2d 987 (Okla. 1951)   .   .   .   .   .   .   5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)   .   .   .   .   .   .   .   4

*Madoux v. City of Norman,*
    No. CIV-07-435-F, 2008 WL 938596 (W.D. Okla. Apr. 4, 2008)   .   9

*May v. Cnty. of Trumbull,*
    127 F.3d 1102 (Table), 1997 WL 651662 (6th Cir. 1997) .   .   .   19, 20

*Meade v. Grubbs*,
841 F.2d 1512 (10th Cir. 1988)   .   .   .   .   .   . 8, 20, 21

*Meadows v. Whetsel*,
No. CIV-14-1030-HE, 2015 WL 7016496 (W.D. Okla. Nov. 10, 2015) .   18

*Medina v. State*,
871 P.2d 1379 (Okla. 1993) .   .   .   .   .   .   . 23, 24

*Monell v. New York City Dept. of Social Servs.*,
436 U.S. 658 (1978)   .   .   .   .   .   .   . 16, 17

*Oklahoma Pub. Emp. Ass'n v. Oklahoma Dep't of Cent. Serv.*,
55 P.3d 1072 (Okla. 2002)   .   .   .   .   .   .   . 5, 20

*Oxendine v. Kaplan*,
241 F.3d 1272 (10th Cir. 2001)   .   .   .   .   .   .   13

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986)   .   .   .   .   .   . 5, 16, 17

*PeTA v. Rasmussen*,
298 F.3d 1198 (10th Cir. 2002)   .   .   .   .   .   .   4

*Purvey v. State*,
905 P.2d 770 (Okla. 1995) .   .   .   .   .   .   .   24

*Quintana v. Santa Fe Cnty. Bd. of Comm'rs*,
973 F.3d 1022 (10th Cir. 2020)   .   .   .   .   .   . 14, 15

*Randle v. City of Aurora*,
69 F.3d 441 (10th Cir. 1995) .   .   .   .   .   .   . 17, 19

*Redding v. State*,
882 P.2d 61 (Okla. 1994)   .   .   .   .   .   .   24

*Sac and Fox Nation v. Pierce*,
213 F.3d 566 (10th Cir. 2000)   .   .   .   .   .   .   11

*Schneider v. City of Grand Junction Police Dep't*,
717 F.3d 760 (10th Cir. 2013)   .   .   .   .   .   . 8, 9

*Self v. Crum*,
439 F.3d 1227 (10th Cir. 2006)   .   .   .   .   .   .   13

*Shepard v. Dallas Cnty.*,
    591 F.3d 445 (5th Cir. 2009) .   .   .   .   .   .   .    19

*State v. Burris*,
    894 P.2d 1122 (Okla. 1995) .   .   .   .   .   .   .    24

*State v. Dixon*,
    912 P.2d 842 (Okla. 1996) .   .   .   .   .   .   .    21

*State ex rel. Macy v. Bd. of Cnty. Comm'rs*,
    986 P.2d 1130 (Okla. 1999) .   .   .   .   .   .   .    10

*Strain v. Regalado*,
    977 F.3d 984 (10th Cir. 2020) .   .   .   .   .   .    13

*Summey v. Tisdale*,
    658 P.2d 464 (Okla. 1982) .   .   .   .   .   .   .    10

*Taylor v. Barkes*,
    575 U.S. 822 (2015) .   .   .   .   .   .   .    15

*The Wilderness Soc'y v. Kane Cnty.*,
    632 F.3d 1162 (10th Cir. 2011) .   .   .   .   .   .    11

*Thompson v. City of Lawrence*,
    58 F.3d 1511 (10th Cir. 1995) .   .   .   .   .   .    16

*Tulsa Cnty. Budget Bd. v. Tulsa Cnty. Excise Bd.*,
    658 P.2d 464 (Okla. 1982) .   .   .   .   .   .   .    10

*Tulsa Exposition & Fair Corp. v. Bd. of Cnty. Comm'rs*,
    468 P.2d 501 (Okla. 1970) .   .   .   .   .   .   .    5, 20

*Turner v. Bd. of Cnty. Comm'rs*,
    No. CIV-18-36-SLP, 2019 WL 1997473 (W.D. Okla. May 6, 2019) .    18

*Wilson v. Seiter*,
    501 U.S. 294 (1991) .   .   .   .   .   .   .    13

## Constitutional and Statutory Provisions and Rules

Okla. Const. art. 17, § 1 .   .   .   .   .   .   .   .    5

Okla. Const. art. 17, § 2 .   .   .   .   .   .   .   .    7

Okla. Stat. tit. 12, § 1053 .   .   .   .   .   .   .   .    11

Okla. Stat. tit. 19, § 3.   .   .   .   .   .   .   .   .   .   7

Okla. Stat. tit. 19, § 4.   .   .   .   .   .   .   .   .   .   5

Okla. Stat. tit. 19, § 339   .   .   .   .   .   .   .   .   .   8, 20

Okla. Stat. tit. 19, § 215.19   .   .   .   .   .   .   .   .   7

Okla. Stat. tit. 19, § 225   .   .   .   .   .   .   .   .   .   7

Okla. Stat. tit. 19, § 570   .   .   .   .   .   .   .   .   .   5

Okla. Stat. tit. 19, § 1414   .   .   .   .   .   .   .   .   9

Okla. Stat. tit. 20, § 91.1   .   .   .   .   .   .   .   .   .   7

Okla. Stat. tit. 51, § 152   .   .   .   .   .   .   .   .   .   8, 20

Okla. Stat. tit. 51, § 152.1   .   .   .   .   .   .   .   .   21

Okla. Stat. tit. 51, § 155   .   .   .   .   .   .   .   .   23, 24

Okla. Stat. tit. 68, § 2814   .   .   .   .   .   .   .   .   7

Okla. Stat. tit. 68, § 3006   .   .   .   .   .   .   .   .   9

Okla. Stat. tit. 68, § 3007   .   .   .   .   .   .   .   .   9

Okla. Stat. tit. 68, § 3010   .   .   .   .   .   .   .   .   9

Okla. Stat. tit. 68, § 3019   .   .   .   .   .   .   .   .   9

Okla. Stat. tit. 70, § 4-101   .   .   .   .   .   .   .   .   7

Fed. R. Civ. P. 12   .   .   .   .   .   .   .   .   .   4, 12

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| BILL AND RHONDA SPRAY,<br>Individually and as Representatives of<br>THE ESTATE OF SINDI SPRAY,<br><br>    Plaintiffs,<br><br>vs.<br><br>THE BOARD OF COUNTY<br>COMMISSIONERS OF OKLAHOMA<br>COUNTY, et al.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. | CIV-20-1252-C |

## SPECIAL APPEARANCE AND MOTION TO DISMISS AMENDED COMPLAINT BY DEFENDANT BOARD OF COUNTY COMMISSIONERS

### INTRODUCTION

Sindi Spray was a heroin addict and high-end escort whose lifestyle led to her tragic death and, no doubt, left her family feeling frustrated and helpless long before.

On June 20, 2018, the Vice Unit of the Oklahoma City Police Department set up a sting operation designed to arrest prostitutes who advertised their illicit services on a website called Escort Monkey. Sindi Spray was one of the escorts who utilized the site under the name of "Billi." There she posted photographs, described her physical traits, grooming habits, and listed her service rates at $200.00 per hour for in-calls and $250.00 for out-calls. Using the information from Escort Monkey, an undercover vice officer arranged to meet Ms. Spray at the Studio 6 motel in Midwest City. They agreed that Ms. Spray would be paid $100.00 up front for predetermined sexual acts with balance due at the conclusion of their time together. Ms. Spray arrived at the motel as agreed and secured a room for her client. There, the undercover officer revealed his true identity and placed her under arrest. Ms.

Spray advised that her common law husband was waiting in the car for her in the parking lot. A K-9 unit was called to check the vehicle in which her husband was waiting. Before they arrived, however, Ms. Spray admitted that she was a heroin user and had needles in the vehicle.

Sindi Spray was charged with the felony offense of Using a Computer in the Commission of a Crime and the misdemeanor offense of Offering to Engage in an Act of Prostitution in Oklahoma County Case No. CF-2018-3367. On December 12, 2018, the Oklahoma Highway Patrol arrested Ms. Spray in Pottawatomie County. The next day she was transported to the Oklahoma County Detention Center. At the time of booking, Ms. Spray was screened by medical personal; she reported that she had asthma and a heroin addiction, but no other medical conditions. She further reported that she had taken a large amount of heroin the day before. Ms. Spray complained of sweating, cold chills, runny nose, restlessness and back pain, which she attributed to withdrawal. Accordingly, she was placed on detoxification monitoring and prescribed a regimen of medications to assist in the process including Loperamide, Promethazine, Clonidine, Ibuprofen, Methocarbonal, and Dicyclomine.

While in the Oklahoma County Detention Center, Ms. Spray was seen by medical staff on a daily basis between December 13, 2018, and December 16, 2018. Indeed, her vital signs were taken and recorded daily. In fact, she was seen twice by medical staff on December 16, 2018 – once at 9:00 a.m. in the onsite medical clinic and the last of which at 12:30 p.m., approximately five hours before her death. In addition to being seen by medical staff, Ms. Spray was seen by detention officers performing routine sight checks of the inmates. The last sight check performed on her cell was just 30 minutes before she became

2

unresponsive; at that time, there was no indication from Ms. Spray or her cellmate that she was in distress. At approximately 4:53 p.m. on December 16, 2018, detention officers were called to respond to Ms. Spray's cell on a report that she had stopped breathing and was dead. Despite efforts to resuscitate her, she did not regain consciousness. An autopsy revealed that Ms. Spray died of natural causes, namely, a perforated duodenal ulcer. Unfortunately, the symptomology of a perforated duodenal ulcer is nearly identical to withdrawal symptoms.

**ARGUMENT AND AUTHORITIES**

Defendant Board of County Commissioners of Oklahoma County denies that Plaintiffs are entitled to any relief. As an initial matter, Defendant submits that Plaintiffs lack standing to bring any federal or state law claim against the Board. Even apart from Plaintiffs' lack of standing, Defendant denies that Plaintiffs are entitled to relief pursuant to Sections 1983 of Title 42 of the United States Code, as their allegations fail to state a plausible claim for relief. Defendant further retains sovereign immunity on Plaintiffs' state law claims and, thus, the same must be dismissed for want of subject matter jurisdiction. As such, Defendant is entitled to dismissal of Plaintiffs' Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure.

## I.   PLAINTIFFS LACK STANDING TO BRING ANY FEDERAL OR STATE LAW ACTION AGAINST THE BOARD OF COUNTY COMMISSIONERS.

As jurisdictional and threshold matters, Plaintiffs lack standing to pursue any federal or state law claim against Defendant Board. Plaintiffs lack standing in two different respects. First, Plaintiffs lack constitutional standing required to invoke this Court's Article III jurisdiction, as they cannot establish a causal connection between the injuries alleged and

Defendant Board as a matter of law. Secondly, Plaintiffs lack prudential standing where they seek, in part, to assert individual claims based upon the rights of the decedent.

## A. NO INJURY IS FAIRLY TRACEABLE TO CONDUCT OF THE BOARD.

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a claim for relief on the grounds that the court lacks jurisdiction. Fed.R.Civ.P. 12(b)(1). Pursuant to Article III of the Constitution, a federal court has jurisdiction to hear "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). An essential element of jurisdiction to resolve a case or controversy is that of standing. *Id.*; *see also PeTA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002). To have standing, there must be (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury is redressable by a favorable decision. *Id.* at 560-61.

Regarding the second element, the United States Supreme Court has said that, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. at 560. "To satisfy the traceability requirement, the defendants' conduct must have caused the injury." *Doe v. Hunter*, 796 Fed.Appx. 532, 538 (10th Cir. 2019); *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008). The "traceability" of a plaintiff's harm to the defendant's actions need not rise to the level of proximate causation; however, Article III does "require proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Id*. Here, no injury of Plaintiffs is fairly traceable to acts or omissions of Defendant Board and, thus, they lack standing.

In a civil rights action under Section 1983, a plaintiff must identify the official(s) responsible for the particular unconstitutional conduct alleged to have occurred. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). When bringing a civil rights claim against a county, the plaintiff must necessarily identify which official exercises policy-making authority in the area out of which his complaint arises. The Supreme Court in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), recognized that in many local government bodies, the policy-making authority is spread among a number of officials. *Id*. As succinctly stated by the Court: local governments "often spread policymaking authority among various officers and official bodies," and thus, "particular officers may have authority to establish binding policy respecting particular matters." *Pembaur*, 475 U.S. at 483.

"[T]he identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense." *City of St. Louis v. Prapotnik*, 485 U.S. 112, 124 (1988). Rather, the inquiry is one of state law. *Id*. While remarking that state law will not always be the hallmark of clarity, the Supreme Court has stated, "we can be confident that state law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id*. at 124-25. Lest there be any doubt that the relevant legal inquiry commands examination of state law even at an early stage of litigation, the Supreme Court has made clear that "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it. And certainly there can be no justification for giving a jury the discretion to determine which officials are high enough in the government that their actions can be said to represent a decision of the government itself." *Id*. at 126.

Just as Section 1983 requires an examination of a defendant's statutory authority to act as a policy-maker, state law requires the same analysis in determining the proper party to be sued on a state law theory of recovery. Section 4 of Title 19 limits the required naming of the Board as a defendant to those cases and controversies arising out of contract. Okla. Stat. tit. 19, §4. In all other instances, a plaintiff seeking to hold the County vicariously liable must name as defendant the County officer, in his or her official capacity, charged with authority in the area out of which the suit arises. Okla. Stat. tit. 19, §4; *cf. Bowens v. Bd. of Cnty. Comm'rs*, No. CIV-19-314-C, 2020 WL 2892670, *2 (W.D. Okla. June 2, 2020). Here, a proper examination of Oklahoma law makes it plainly and unequivocally clear that the Board of County Commissioners has no authority to act in the areas out of which Plaintiffs' claims arise such that they do not have standing to bring any federal or state law claim against the Board of County Commissioners.

The Oklahoma Constitution creates counties to be bodies corporate and politic. Okla. Const. art. 17, §1. Counties are involuntary, subordinate political subdivisions of the State. *Johnson v. Conner*, 236 P.2d 987, 989 (Okla. 1951). A political subdivision exists only to aid in the administration of governmental affairs and has no inherent powers of its own. *Id*. Because counties have no inherent sovereign power, they "possess only such authority as is conferred upon them by law and such authority must be exercised in the manner provided by law." *Tulsa Expo. & Fair Corp. v. Bd. of Cnty. Comm'rs*, 468 P.2d 501, 507-08 (Okla. 1970). As a corollary, it is often stated that public officers possess only such power as is expressly granted to them by law and that which is necessarily incidental to carry out express authority. *Id*. at 507-08; *Oklahoma Pub. Emp. Ass'n v. Oklahoma Dep't of Cent. Serv*., 55 P.3d 1072, 1084 (Okla. 2002).

6

As provided by the Oklahoma Constitution and statutes, county functions are spread among eight elected officials, namely, a Court Clerk, a County Clerk, a Sheriff, a Treasurer, a County Assessor, and three County Commissioners who together comprise the Board of County Commissioners.[1] Okla. Const. art. 17, §2; Okla. Stat. tit. 19, §3; Okla. Stat. tit. 68, §2814. Each of these officials has their own realm of statutory authority outside of which they cannot act. As constitutionally independent officers, no one official exercises superintending authority over another. Okla. Const. art. 17, §2. This is necessarily true of the Board of County Commissioners as well; the Board does not act in a supervisory capacity over other elected County officers. *See Jantzen v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999)(noting that a County Sheriff neither reports to nor is controlled by a Board of County Commissioners).

Given the limited sovereign authority vested in counties and county officials by the Legislature, in either an action brought under Section 1983 or one brought asserting a state law tort claim, it is crucial for the plaintiff to identify which official exercises statutory authority in the area out of which his complaint arises. This is true not only to plead a civil rights claim, but also to establish standing to bring an action against the Board on any other theory of tort liability. Because standing requires that the conduct complained of be fairly traceable to the defendant, if the named defendant is a county official, the analysis must necessarily include an examination of the breadth of the official's statutory authority. To find otherwise would run afoul of the Supreme Court's directive that a federal court may not

---

[1] The offices of County Judge, County Attorney, Registrar of Deeds, County Surveyor, and County Superintendent of Public Instruction created within the Oklahoma Constitution have all been abolished by the Legislature. Okla. Stat. tit. 19, §§ 215.19, 225, 570; Okla. Stat. tit. 20, § 91.1; Okla. Stat. tit. 70, § 4-101.

simply assume policy-making authority lies elsewhere than where it is squarely placed by state law. *Prapotnik*, 485 U.S. at 126.

Turning to the case at bar, Plaintiffs must establish that any injury was fairly traceable to conduct of the Board of County Commissioners and not some other actor. This they cannot do, as the Board has no express statutory authority to act in operating the Oklahoma County Detention Center. Okla. Stat. tit. 19, §339. In fact, Oklahoma law makes clear that jail medical providers are state employees – not agents, representatives, or employees of the County – even when performing such services under contract with a County. Okla. Stat. tit. 51, § 152(b)(7). The absence of statutory authority of the Board to act in the area of jail operations and/or medical care is critical – if the Board has no authority to act in this area, no injury of Plaintiffs can be shown to be traceable to the acts or omissions of Defendant BOCC.

The Oklahoma Supreme Court, which is the final arbiter of Oklahoma law, has held that a Board of County Commissioners cannot be held liable for a claim brought under Section 1983 for alleged constitutional violations occurring in a county jail precisely because the Board has no statutory power to hire, train, or supervise jail employees. *Estate of Crowell v. Bd. of Cnty. Comm'rs*, 237 P.3d 134, 142 (Okla. 2010).  So too has the Tenth Circuit. Although not addressing the question of standing, the decisions in *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988) and *Jantzen v. Hawkins*, 188 F.3d 1247 (10th Cir. 1999) are instructive not only for their examination of the roles of county officers but the conclusion that a Board of County Commissioners has no authority in the area of jail operations or to supervise the Sheriff of his deputies. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988), *abrogated in part on other grounds*, *Schneider v. City of Grand Junction Police Dep't*, 717

F.3d 760 (10th Cir. 2013)(stating "[u]nder Oklahoma law, the Board has no statutory duty to hire, train, supervise or discipline the county sheriff's or their deputies."); *Jantzen*, 188 F.3d at 1259 (rejecting position that Board of County Commissioners should be held liable because a suit against the sheriff in his official capacity "is essentially the same entity as the Board" and stating that "[t]he Sheriff neither reports to, nor is controlled by, the Board" and, therefore could not be held liable for the acts of the Sheriff or his deputies); *see also Madoux v. City of Norman*, No. CIV-07-0435-F, 2008 WL 938596, at *2 (W.D. Okla. Apr. 4, 2008).

These authorities unquestionably demonstrate that the Board of County Commissioners, as a matter of law, has no power to act in the operation of the county jail or the provision of medical care to inmates thereof. In an apparent attempt to circumvent their lack of causal link between jail operations and Defendant Board, Plaintiffs present new allegations that the Board of County Commissioners failed to adequately fund jail operations. Here too Plaintiffs have deliberately ignored state law. As a matter of law, it is the county Excise Board that bears legal responsibility for the final approval of the budget for a county; this is true regardless of whether the budget is prepared by the Board of County Commissioners or a Budget Board, in those counties electing to come under the County Budget Act. Okla. Stat. tit. 19, §1414; Okla. Stat. tit. 68, §§3007-3010, 3019. The Excise Board is "an agency of the state, as a part of the system of checks and balances required by the Constitution, and as such it is empowered to require adequate and accurate reporting of finances and expenditures for all budget and supplemental purposes, charged with the duty of requiring adequate provision for performance of mandatory constitutional and statutory governmental functions within the means available...." Okla. Stat. tit. 68, §3006(B). The Excise Board functions as a "watchdog agency" by exercising supervisory powers over the

budgeting process and ensuring that the adopted budget passes legal muster. *Summey v. Tisdale*, 658 P.2d 464, 467 (Okla. 1982); s*ee also e.g., Tulsa Cnty. Budget Bd. v. Tulsa Cnty. Excise Bd.*, 81 P.3d 662 (Okla. 2003); *State ex rel. Macy v. Bd. of Cnty. Comm'rs*, 986 P.2d 1130, 1135-36 (Okla. 1999).  Neither a Board of County Commissioners nor a Budget Board has authority to alter a budget that has been approved and certified by the Excise Board. *Macy*, 986 P.2d at 1136, 1140.

Plaintiffs' Amended Complaint tacitly admits that no act or omission of Defendant Board contributed to the injuries alleged. In fact, Plaintiffs expressly plead that it is independent contractor and state employee Turn Key Health Clinics that was responsible for developing medical care policies as well as providing medical care to inmates of the detention center. [DOC 14, Amended Complaint ¶ 23, 40-46] Undoubtedly, it is Plaintiffs' own failure to bring suit against the actual wrongdoers within the statute of limitations that now drives their attempt to bootstrap some claim to Defendant Board.[2] Unfortunately, the state laws that determine policy-making authority for purposes of their Section 1983 and state law claims precludes such desperate efforts as a matter of law. Because Plaintiffs' alleged injuries are not fairly traceable to any act or omission of Defendant BOCC, Plaintiffs lack standing and any federal and state law claims must be dismissed.

## B.    PLAINTIFFS LACK PRUDENTIAL STANDING TO ASSERT FEDERAL AND STATE LAW CLAIMS OF THEIR OWN.

In addition to Article III standing, a plaintiff must have prudential standing. Though separate from constitutional standing, prudential standing is a threshold inquiry "which

---

[2] Plaintiffs tacitly confess their failure to exercise due diligence in ensuring their claims have a good faith basis prior to bringing suit. Plaintiffs initially included as named Defendants John Whetsel and Armor Correctional Health Services, Inc. They now acknowledge that Whetsel left office over a year and a half before the decedent was arrested and that Armor ceased serving as the County's medical provider six months before her arrest.

embodies judicially self-imposed limits on the exercise of federal jurisdiction." *The Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 (10th Cir. 2011). "Prudential limitations – which are closely related to Article III concerns but essentially matters of judicial self-governance – include a general prohibition on a litigant raising another person's legal rights." *Id.* (internal quotations omitted); *Sac and Fox Nation v. Pierce,* 213 F.3d 566, 573 (10th Cir. 2000). In the present case, Plaintiffs lack prudential standing with regard to their individual federal and state law claims. [DOC 14, Amended Complaint ¶ 3]

A Section 1983 action exists to vindicate personal rights; a plaintiff may not seek redress for the violation of the rights of others. *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990); *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir. 1982). This is a tenant of state law as well. *Forest Oil Corp. v. Corp. Comm'n*, 807 P.2d 774, 788 (Okla. 1990). These principals are founded on the notion that "constitutional rights are personal and may not be asserted vicariously." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973); *Forest Oil*, 807 P.2d at 788. Concomitantly, only the representatives acting on behalf of an estate may bring a state law claim for wrongful death. Okla. Stat. tit. 12, §1053.

In the present case, Plaintiffs seek relief only for the wrongs they allege were committed against decedent, rather than any of their own. In this light, Plaintiffs do not have a legally protected interest in the litigation apart from what they may have as representatives of decedent's estate. As such, Plaintiffs lack prudential standing and their individual claims against Defendant must be dismissed.

II.     **PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER SECTION 1983 AND, THUS, DEFENDANT IS ENTITLED TO DISMISSAL OF THE FEDERAL LAW CLAIM PURSUANT TO RULE 12(B)(6).**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a claim for relief on the grounds that the plaintiff has failed to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). A motion to dismiss may be granted if, "viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain enough facts to state a claim to relief that is plausible on its face." *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007)(quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Applying these principles to the Amended Complaint in the case at bar, the same must be dismissed for failure to state a claim upon which relief may be granted.

A.     **PLAINTIFFS FAIL TO ESTABLISH ANY VIOLATION OF DECEDENT'S CONSTITUTIONAL RIGHT TO ADEQUATE MEDICAL CARE.**

It is well established that the Constitution does not guarantee a prisoner the type or scope of medical treatment of his choice. *Henderson v. Sec. of Corr'ns*, 518 F.2d 694, 695 (10th Cir. 1975). Nor is the Constitution offended by claims of mere negligence in diagnosing or providing medical care. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Rather, to state a claim under Section 1983 for a violation of a prisoner's right to adequate medical care, a plaintiff must demonstrate that the defendant was deliberately indifferent to his serious

medical needs. *Estelle*, 429 U.S. at 104; *Strain v. Regalado*, 977 F.3d 984, 990-93 (10th Cir. 2020). "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 827 (1994).

The deliberate indifference standard has two components, each of which a plaintiff must establish: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending official act with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). To satisfy the objective component of the inquiry, the plaintiff must establish a sufficiently serious medical need. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999); *see also Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). As stated by the Tenth Circuit, "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id*. Under the subjective component, an official does not violate the Eighth Amendment unless the official knows of and disregards an excessive risk; that is to say, the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006).

For purposes of argument alone, Defendant assumes that decedent's duodenal ulcer is a serious medical condition. Nevertheless, lacking from the Amended Complaint is any factual allegations that, if true, tend to show that any County employee subjectively knew that the decedent had a serious medical condition and disregarded a substantial risk of serious harm to her. Plaintiffs admit that decedent was seen by medical professionals in the jail and provided medication, though for conditions other than the condition that led to her death.

13

Nothing in Plaintiffs' Amended Complaint alleges that the decedent's perforated duodenal ulcer was known by anyone to exist, including decedent herself. Nor do Plaintiffs allege that any County employee knew of and disregarded any symptom of her duodenal ulcer that was so obvious that it would put a layperson on notice that immediate medical treatment was necessary. Finally, Plaintiffs do not allege that decedent displayed any symptom that was atypical to any other inmate in addiction withdrawal and which would put a layperson on notice that she was in need of immediate treatment at all, much less treatment above that which she was already receiving. The decision of the Tenth Circuit in *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022 (10th Cir. 2020) is on point.

In *Quintana*, a pretrial detainee was determined at the time of booking to be a heroin addict likely to undergo withdrawal while incarcerated. *Quintana*, 973 F.3d at 1027. Accordingly, he was offered a series of medications to treat him for withdrawal, though plaintiff claimed the medications were never administered. *Id.* No further medical assistance was provided. *Id.* Three days later, the inmate was found unresponsive in his cell, disrobed and partially covered in feces and bodily fluids; an autopsy revealed he died of an acute gastrointestinal hemorrhage likely caused by heroin withdrawal. *Id.* The district court granted motions to dismiss, in part, finding that the individual defendants were entitled to qualified immunity because the facts as alleged did not establish that the decedent's constitutional right to adequate medical care had been violated. *Id.* at 1028. On appeal, the Tenth Circuit agreed to the extent that plaintiff failed to establish the subjective component of a denial of adequate medical care claim. *Id.* In particular, the plaintiff failed to plead any facts that would indicate that a reasonable layperson person should have been on notice that there was a serious condition in need of treatment. *Id.* The Court explained,

14

> We have previously held that unconsciousness presents such an "obvious" risk. We have likewise held that "a gangrenous hand or serious laceration" would also present an "obvious" risk. But – in the case whose circumstances most nearly match those of this case – we have held that "characteristics common to many intoxicated individuals do not present an "obvious" risk. In our view, frequent vomiting alone does not present an obvious risk of severe and dangerous withdrawal. For clarity as further explained below, we agree that the bloody vomiting Officer Chavez allegedly knew of does present an obvious risk. After all, blood would imply to a reasonable detention official that there is an actual internal injury. But since the complaint limits this allegation to Office Chavez, we see no reason to export allegations of this knowledge to the other individual defendants.

*Id*. at 1029 (citations omitted).

Rather than a true allegation of deliberate indifference, Plaintiffs' core complaint is one of medical negligence in failing to adequately screen the decedent to determine the existence of a latent medical condition and thereafter treat the same adequately. In particular, Plaintiffs' expressly fault Defendant for failing to inquire of her medical history, conduct medical screenings, and/or provide some higher level of care in order to discover the condition in the first instance. [DOC 14, Amended Complaint ¶¶ 26, 28-31, 43-44, 46-47, 74] However, no decision of the United States Supreme Court or the Tenth Circuit has mandated, as a constitutional matter, medical screening designed to discover a latent medical condition in need of treatment. *Cf. Taylor v. Barkes*, 575 U.S. 822, 825-26 (2015); *Cox v. Glanz*, 800 F.3d 1231, 1251 (10th Cir. 2015). As Plaintiffs have failed to allege a plausible claim that decedent's right to adequate medical care was denied, their federal law claim against Defendant BOCC must be dismissed for failure to state a claim upon which relief may be granted.

**B.  PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM THAT DEFENDANT BOARD HAD A CUSTOM OR POLICY THAT CONTRIBUTED TO ANY VIOLATION OF DECEDENT'S RIGHTS.**

Because Plaintiffs have failed to plead sufficient facts to state a plausible claim that decedent's Fourteenth Amendment right to adequate medical care was violated, the analysis is at an end; without an underlying violation of federal statutory or constitutional law, there can be no liability imposed against Defendant. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995). Nevertheless, the Amended Complaint is also subject to dismissal on the grounds that Plaintiffs have failed to plausibly allege that any violation of decedent's constitutional rights was attributable to an official custom or policy of the Board of County Commissioners.

While an action under Section 1983 may be brought against a municipal body or other local government entity, recovery is limited to acts that are officially sanctioned by such an entity; it is for this reason that a plaintiff must demonstrate that the entity's "policy or custom" caused the constitutional tort. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). "Put another way, for a local government unit such as the Board [of County Commissioners] to be liable for violating §1983, that unit's allegedly unconstitutional act (or the act of the defendant in his or her official capacity) must execute 'a government's policy or custom.'" *Jantzen*, 188 F.3d at 1259 (quoting *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 694 (1978)).

To establish the existence of a "custom," a plaintiff must demonstrate: (1) a continuing, widespread, and persistent pattern of misconduct; (2) deliberate indifference or tacit approval of misconduct by policy-making officials; and (3) injury to the plaintiff as a result of the custom. *Gates v. Unified Sch. Dist. No. 449 of Leavenworth Cnty.*, 996 F.2d

1035, 1041 (10ᵗʰ Cir. 1993). Typically, a plaintiff must demonstrate that similarly situated persons were subjected to the same improper treatment. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10ᵗʰ Cir. 2008); *Randle v. City of Aurora*, 69 F.3d 441, 447 (10ᵗʰ Cir. 1995). Municipal liability may also be imposed if the action is taken pursuant to a "policy" provided the plaintiff demonstrates: (1) a policy adopted by the municipality or officials responsible under the law for making policy in the area; or (2) a decision made by an official with final policy-making authority within the area. *Pembaur*, 475 U.S. at 480-81; *Randle*, 69 F.3d at 447-48.

The requirement that a plaintiff demonstrate the existence of a custom or policy is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479 (emphasis in original). Concomitantly, a government body is not liable under Section 1983 for the acts of an employee under a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.

Plaintiffs' Amended Complaint does not contain a single factual averment that any violation of decedent's constitutional rights was attributable to an official custom or policy of Defendant Board. In fact, a majority of Plaintiffs' allegations in this regard are nothing more than rote recitations that a custom or policy existed. [DOC 14, Amended Complaint, ¶¶ 36, 42, 44-45, 59, 69-71, 74-76, 80] These threadbare legal conclusions, however, may neither be accepted as true nor relied upon as a basis to find that a plausible claim has been stated. *Iqbal*, 556 U.S. at 678.

Plaintiffs fare no better with their allegation that Defendant failed to adequately train or supervise employees. While failure to properly train and supervise employees may serve

as the basis for municipal Section 1983 liability, it may do so only in limited circumstances; in such instances, a plaintiff must show that the municipal action was taken with deliberate indifference as to its known or obvious consequences. *Canton v. Harris*, 489 U.S. 378, 387-88 (1989); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). Stated another way:

> The plaintiff must prove the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need for additional training.  Ordinarily, proof of a single incident of unconstitutional activity is not sufficient to impose municipal liability. In the case where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued.

*Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996)(internal citations and quotations omitted). Here too, Plaintiffs fail to identify what specific training or supervision practices were deficient and/or how the failure to provide adequate employment practices contributed to a violation of decedent's rights. In short, Plaintiffs conclusory legal assertions are insufficient to raise Plaintiffs' right to relief above a speculative level. *Iqbal*, 556 U.S. at 678.

Apart from their conclusory recitations, Plaintiffs do make some effort to rectify their deficient Complaint; yet, none is sufficient to save their claim for municipal liability. First, Plaintiffs' aver that in 2008 the Department of Justice issued a report finding instances of constitutional deficiencies in the Oklahoma County Detention Center. However, the report describes conditions alleged to exist in the jail in 2007 at the latest. *Turner v. Bd. of Cnty. Comm'rs*, No. CIV-18-36-SLP, 2019 WL 1997473, at *4 (W.D. Okla. May 6, 2019); *Meadows v. Whetsel*, No. CIV-14-1030-HE, 2015 WL 7016496, at *6 (W.D. Okla. Nov. 10, 2015). Plaintiff's reliance on the 2008 report is simply too remote, too speculative, and too

conclusory to allow a reasonable inference that the same conditions existed and/or contributed to decedent's circumstances eleven years later in 2018. *Id*.

Next Plaintiffs attempt to resurrect the abandoned case of *Bermea v. Bd. of Cnty. Comm'rs*, Western District Case No. CIV-2018-606-R and allege that the circumstances there, along with those presented in *Chrisman v. Bd. of Cnty. Comm'rs*, Western District Case No. CIV-2017-1309-D and other unspecified deaths occurring between 2016 through 2018 establish a long-standing custom of the denial of medical care. Notably, Plaintiffs' attempted reliance on *Chrisman* is disingenuous to say the least. As Plaintiffs' are well aware, *Chrisman* is a civil rights claim for use of excessive force, [DOC 20, Amended Complaint 17-CV-1309-D], for which motions for summary judgment are currently pending before this Court. Such a case can hardly be considered as indicative of a pattern of inadequate medical care. This is true of Plaintiffs' generalized assertion that there have been other unspecified deaths as well. After all, it is incumbent upon Plaintiffs to show that others similarly situated were also denied constitutionally adequate medical care. *Carney*, 534 F.3d at 1274; *Randle*, 69 F.3d at 447.

In their final effort to allege the existence of a custom or policy that contributed to the denial of decedent's constitutional rights, Plaintiffs urge that Defendant had a history of underfunding jail operations and, in one instance occurring three years before decedent was arrested, failed to pay certain amounts owed to its former medical provider, Armor Health Care. On this point, no decision of the Tenth Circuit has found that budget appropriations, or insufficiency thereof, can serve as a basis of establishing a municipal custom or policy. Other circuit courts, however, have expressly rejected the notion. *Shepherd v. Dallas Cnty*., 591 F.3d 445, 454 (5th Cir. 2009); *May v. Cnty. of Trumbull*, 127 F.3d 1102 (Table), 1997 WL

651662, at *3 (6th Cir. 1997). In particular, the Sixth Circuit has reasoned that budgetary decisions are not reflective of intent and lack a causal connection to a particular event. *May*, 1997 WL 651662, at *3. That is to say, such decisions are too attenuated and complex to evince deliberate disregard to a known risk to the decedent. Even if circumstances existed where funding could give rise to constitutional liability, Plaintiffs offer nothing more than a conclusory allegation that jail funding was inadequate – just as their other conclusory assertions, the general assertion of inadequate funding does nothing to establish a custom or policy of the County. Plaintiffs make no attempt to plead the manner in which a county budget is formed, which officials are charged with formulating the budget, how funding is allocated to detention services, what control over such appropriations Defendant Board might exercise, and how it would have been plainly obvious that a failure to allocate funding in a different manner might have contributed to a failure of the jail medical provider to identify the latent health condition that caused decedent's death.

Unequivocally, Plaintiffs' have failed to sufficiently allege the existence of a long-standing custom of constitutional deprivations or a policy that contributed to a denial of decedent's rights. More significantly, Plaintiffs do not make any specific factual allegations within the sphere of power of the Board of County Commissioners. As thoroughly demonstrated in Proposition I and adopted herein, Defendant Board has no power to act with regard to the operation of the jail and the supervision and control of jail employees or state-employee medical staff. Okla. Stat. tit. 19, §339; Okla. Stat. tit. 51, §152(b)(7); *Tulsa Exposition*, 468 P.2d at 507-08; *Oklahoma Pub. Emp. Ass'n*, 55 P.3d at 1084; *Meade*, 841 F.2d at 1528; *Jantzen*, 188 F.3d at 1259. That a Board of County Commissioners cannot be held liable in a Section 1983 action for a denial of constitutional rights involving the

operation of a detention center has been firmly established. *Crowell*, 237 P.3d at 142; *Meade*, 841 F.2d at 1528; *Jantzen*, 188 F.3d at 1259. In this light, Plaintiffs' efforts to bring any claim against Defendant Board are nothing more than a sort of vicarious liability for which Section 1983 liability cannot lie. Accordingly, Plaintiffs' Amended Complaint against Defendant Board of County Commissioners must be dismissed for failure to state a claim upon which relief may be granted.

## III. DEFENDANT RETAINS SOVEREIGN IMMUNITY OVER PLAINTIFFS' STATE LAW CLAIM AND, THUS, THE SAME MUST BE DISMISSED FOR WANT OF SUBJECT MATTER JURISDICTION.

In addition to pressing a federal civil rights claim, Plaintiffs bring a state law tort claim for violation of the decedent's state constitutional right to adequate medical care. As discussed in Proposition I, Plaintiffs lacks standing to bring suit against the Board of County Commissioners on any such claims. Even apart from Plaintiffs' lack of standing, their state law claim is subject to dismissal because there is no state constitutional right to medical care and the County otherwise retains sovereign immunity. To be sure, Plaintiffs' state law claim is governed by the Governmental Tort Claims Act. Okla. Stat. tit. 51, §§152(14); *Barrios v. Haskell Cnty. Pub. Facilities Auth.*, 432 P.3d 233, 238-241 (Okla. 2018). The Act generally adopts the doctrine of sovereign immunity for the state and its political subdivisions and waives it in part, but only in the manner provided by the Act. Okla. Stat. tit. 51, §152.1. Because sovereign immunity operates to bar a court from adjudicating a particular case, questions of the applicability of the GTCA are treated as jurisdictional in nature. *Chambers v. City of Ada*, 894 P.2d 1068, 1074 (Okla. 1995); *State v. Dixon*, 912 P.2d 842, 843-44 (Okla. 1996). As will be shown, the County cannot be held liable on Plaintiffs' state law claim and, thus, this Court should dismiss the same.

**A.      THERE IS NO STATE CONSTITUTIONAL RIGHT TO MEDICAL CARE.**

Plaintiffs bring a claim for the violation of decedent's state constitutional rights – a claim commonly referred to as a *Bosh* claim for the Oklahoma Supreme Court's decision in *Bosh v. Cherokee Cnty. Gov. Bldg. Auth*, 305 P.3d 994 (Okla. 2013). In that case, the court recognized a private cause of action for the use of excessive force in violation of Article 2, Section 30 of the Oklahoma Constitution. *Bosh v. Cherokee Cnty. Gov. Bldg. Auth*, 305 P.3d 994, 997-1002 (Okla. 2013), *superseded by Barrios v. Haskell Cnty. Pub. Fac. Auth*., 432 P.3d 233, 237-40 (Okla. 2018). Here, however, Plaintiffs attempt to bring a *Bosh* claim predicated on the purported denial of decedent's state constitutional right to medical care. Fatal to their claim is that there is no such recognized state constitutional right in the first instance. This point was illustrated by the Supreme Court in *Barrios v. Haskell Cnty. Pub. Facilities Auth*., 432 P.3d 233 (Okla. 2018).

In *Barrios,* the Court was called upon to determine whether *Bosh* should be extended to recognize a state constitutional claim for the denial of medical and/or psychiatric care to an inmate in violation of Article 2, Sections 7 and 9. *Barrios*, 432 P.3d at 235. In so doing, the Court found neither textual support within Sections 7 and 9 of Article II of the Oklahoma Constitution for the recognition of an inmate's right to medical care while incarcerated nor a common law tradition of the State to be liable in money damages in failing to provide such care. *Id*. at 239-40. Ultimately, however, the Court was not required to affirmatively determine whether such a right existed because, even if it did, it was one for which the state and its political subdivisions retained sovereign immunity under the Governmental Tort Claims Act. *Id*. 237-240. There being no recognized state constitutional right, Plaintiffs' claim for a violation thereof must be dismissed.

**B.      THE COUNTY IS IMMUNE FROM LIABILITY FOR CLAIMS ARISING OUT OF THE OPERATION OF A DETENTION CENTER.**

Much like the Supreme Court in *Barrios*, this Court need not affirmatively reach the question of whether or not there exists a state constitutional right to medical care for inmates of detention centers and prisons, as the question is academic in light of the blanket immunity of the GTCA that would apply to such a claim even if it did exist.

The Governmental Tort Claims Act provides that: "The state or a political subdivision shall not be liable if a loss or claim results from … [p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility…." Okla. Stat. tit. 51, §155(25). In defining the scope of this exemption from liability for jail or correctional facilities in *Medina v. State*, 871 P.2d 1379 (Okla. 1993), the Oklahoma Supreme Court construed the terms "provision, equipping, operation, or maintenance" very broadly.

> The meaning of the words "provision," "equipping," "operation" and "maintenance" is at issue.  Assigning the ordinary meanings to those words, § 155 (23) protects the state from liability for loss resulting from the actual stock of (provision) or the supplying of (equipping) all that is necessary to the functioning of a penal institution, or the process or manner of conducting (operation) the functions of a penal institution, or the process or series of acts necessary to sustaining (maintenance) the proper conditions of a penal institution.

*Medina v. State*, 871 P.2d 1379, 1382 (Okla. 1993). In deciding the scope of this section, the Court considered the language of the statute as a whole and concluded that the GTCA "protects the state and its political subdivisions from liability for loss resulting from the myriad of actions by the officers and employees of a penal institution at the operational level…." *Id*. at 1384.

> Reading the three clauses of § 155(23) together reveals an intent to withhold the waiver of sovereign immunity for any loss or injury, whether to an inmate or other person, resulting from the operational level acts required to furnish the

23

> services of a penal institution including the construction and repair of the facility; the security of the facility; the employment of personnel; the utilities and furnishings of the facility; the food, clothing, items for hygiene and other basic items needed by inmates or other persons; the educational, rehabilitative, communicational, recreational, and *medical and health services or any other service provided for inmates or other persons*; the assignment of an inmate to a facility or a cell; and the release of an inmate ....

*Id*. at 1384 n. 13 (emphasis added). "For purposes of the GTCA, operational functions include all activity involved in the performance of policy...." *Id*. at 1383.

Since *Medina*, the broad scope of operational functions for which a governmental entity is immune from state law liability has been repeatedly reiterated and reaffirmed by the Supreme Court. *See e.g*., *Barrios*, 432 P.3d at 237-40; *Purvey v. State*, 905 P.2d 770, 770-72 (Okla. 1995); *State v. Burris*, 894 P.2d 1122, 1122-23 (Okla. 1995); *Redding v. State*, 882 P.2d 61, 63 (Okla. 1994). More significantly to the case at bar, this immunity has been found to apply to bar any state constitutional claim for denial of medical care to an inmate of a detention center. *Barrios*, 432 P.3d at 238-41.

As provided by the express language of Section 155(25)[3] of the Governmental Tort Claims Act and the extant authorities of the Oklahoma Supreme Court, the Oklahoma Legislature withheld the waiver of sovereign immunity for any loss or injury of the sort now claimed by Plaintiffs. As the County retains sovereign immunity for these claims, liability cannot be imposed against Defendant Board and Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction.

---

[3] Defendant Board submits that other provisions of the Governmental Tort Claims Act may apply to immunize the County on any theory of liability Plaintiff may present, including but not limited to Section 155(1), (4), (5), (13), (16), (18), and (30) as well. However, in the absence of additional facts being alleged in the Amended Complaint, extensive discussion of other immunities is not necessary at this time. Defendant reserves the right to raise additional grounds supporting sovereign immunity should the instant motion to dismiss be denied.

## CONCLUSION

WHEREFORE, the Defendant Board of County Commissioners of Oklahoma County respectfully prays that this Honorable Court grant Defendant's Motion to Dismiss in all respects.

Respectfully submitted,

BY:   s/ Aaron Etherington
AARON ETHERINGTON, OBA #18,259
ASSISTANT DISTRICT ATTORNEY
320 Robert S. Kerr, Suite 501
Oklahoma City, OK 73102
Phone: (405) 713-1600
Fax: (405) 713-1749
aaron.etherington@oklahomacounty.org

*Attorney for the Board of County Commissioners of Oklahoma County*

## CERTIFICATE OF MAILING

This is to certify that a true and correct copy of the above and foregoing document was served on the following person, who is a registered participant of the ECF case filing system:

Danny Shadid
Riggs, Abney, Neal, Turpen, Orbison & Lewis Law Firm
528 NW 12th Street
Oklahoma City, OK 73103
dshadid@riggsabney.com

*Attorney for Plaintiffs*

s/ Aaron Etherington

25