## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **WILLIAM RAY SPRAY, JR., and** | § | |
| **RHONDA JEAN SPRAY, Individually** | § | |
| **and as Personal Representatives of the** | § | |
| **Estate Of Sindi Lucille Spray,** | § | |
| **DECEASED,** | § | |
| | § | |
| **Plaintiff,** | § | **Case No. CIV-20-1252-JD** |
| | § | |
| **vs.** | § | |
| | § | |
| **BOARD OF COUNTY COMMISSIONERS** | § | |
| **OF OKLAHOMA COUNTY, In its Official** | § | |
| **Capacity as Governing Body of the** | § | |
| **County of Oklahoma County,** | § | |
| | § | |
| **Defendants.** | | |

### RULE 26 (a) (2) EXPERT REPORT – MICHAEL W. QUINN, BS, MA

This report is written and furnished by the Expert in accordance with the requirements as specified in Federal Rules of Civil Procedure, V. Depositions and Discovery, Rule 26. (a) (2).

1. **Expert.** My name is Michael W. Quinn.

2. **Qualifications.** - I served twenty-six years as a state-licensed peace officer, deputy, and jailer with the Harris County Sheriff's Department, Houston, Texas's third-largest Sheriff's Office in the United States and largest in the State of Texas. During my tenure, I served in progressively more responsible positions in all aspects of planning and administration. As an executive-level manager (Major for more than 15 years), I managed virtually every aspect of this 3,400-member law enforcement agency. Duty assignments included supervisory or administrative responsibilities in patrol, criminal investigations, communications, human resources, technical services, special services, and jail operations.

As Commander (Major) of Support Services, I was responsible for producing systematic operational policies, practices, and procedures, including the preparation, presentation, and implementation of a $256 million departmental budget; personnel recruiting and training; employee personnel records; disciplinary actions; internal

investigations; workers compensation; payroll; employee benefits; insurance; employee relations; and department response to federal law complaints (FMLA, ADA, EEO, & DOL). I was responsible for recruiting, testing, and hiring the largest personnel increase in departmental history, over 1,000 new deputies in 14 months.

I served as a supervisor and team member responsible for the oversight, project management, budgetary control, and delivery of 3 major jail construction projects-1,000-bed, 3,500-bed, and 4,000-bed facilities. All facilities were delivered on schedule and within budget. During this period, I exercised oversight of approximately 14,500 detainees and inmates, consisting of male and female arrestees and State and Federal inmates.

As the Commander (Major) responsible for Inmate Health Services for the Harris County Jail, I developed and implemented strategic plans, which led to closing a federal lawsuit mandating health care delivery to inmates under constitutional conditions. The first jail-based medical school program was created by partnering with the University of Texas Medical School. These efforts resulted in the Harris County Jail Medical Division becoming accredited by the National Commission on Correctional Health Care (NCCHC), a first-time-ever designation.

The National Commission on Correctional Healthcare has certified me as a Correctional Healthcare Professional.

I hold a Master of Arts in Public Administration and Bachelor of Science in Criminal Justice degrees from the University of Houston.

I am also Texas-certified law enforcement and jail instructor and continue to serve as an instructor at law enforcement agencies and state-approved academies. I have also served as an Adjunct Criminal Justice Professor or Guest Professor at a state-accredited college and a state-accredited university. In addition to my other duties and responsibilities, I am a Law Enforcement Advisor® with OSS-Law Enforcement Advisors® and regularly assess law enforcement and detention operations. A copy of my Curriculum Vitae is attached as *Attachment A.*

3. **Protocol.** In preparation of this evaluation and development of associated opinions, I have conducted an analysis of various facts pertaining to the incident under consideration that were available in documents, including Plaintiffs' Complaint, case filings, witness statements, videos, and other documentation. I instructed my staff at OSS to conduct certain peer reviews of the documents available in this case as well as this report.

It is my understanding discovery in this matter is ongoing as I write this report. My review of material in this matter continues, and as additional documents, information, and data become available, I will conduct further analysis and update this report consistent with my findings, when requested. A listing of documents and other media reviewed and relied upon is provided in a *Document Review List* as Attachment C.

## 4. Background:

On 13 December 2018, Sindi Lucille Spray was booked into the Oklahoma County Detention Center under charges of Failure to Appear.[1] Spray's Intake Screening was conducted on 13 December 2018 at 3:50 pm by Jinna Moore.[2] Spray described symptoms of *frequent fever or chills* due to *sweating from withdrawal*[3] and admitted use of Heroin, with her last use being on 12 December 2018. [4] [5] Spray denied any suicidal ideation[6] and was assigned to General Population with recommended *lower level/lower bunk*.[7] [8] Spray was placed under *Withdrawl/Detox Monitoring*.[9] Throughout Spray's three [3] days in the OCDC, she was evaluated for Drug and Alcohol Withdrawl three [3] times.[10] [11] [12] [13] On 16 December 2018, around 5 pm, Spray was *found unresponsive on cell floor, reported to camera ops by inmates in other cells*.[14] [15] [16] CPR was conducted until Fire arrived and took over. [17] [18] [19] [20] EMSA

[1] DRL 5b - Sindi Spray Booking Sheet (Doc 5). Page 1.
[2] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 1.
[3] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 1.
[4] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 6.
[5] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 58.
[6] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 4.
[7] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 4.
[8] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 6.
[9] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 6.
[10] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 17.
[11] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 19.
[12] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 20.
[13] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7).). Page 21.
[14] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 23.
[15] DRL 5j - Jail Incident Death Report (Doc 19). Page 1.
[16] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[17] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 23.
[18] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[19] DRL 9b - Jessica Julian LPN Statement (Doc 36). Page 1.
[20] DRL 9c - Shirley Reisch RN Statement (Doc 37). Page 1.

arrived and pronounced Spray dead at 6:19 pm.[21] [22] [23] [24] The medical examiner listed Spray's cause of death as a *perforated duodenal ulcer.*[25] [26]

5. **Facts Relied Upon for this Opinion:** Documents reviewed in this case thus far are listed in Attachment C, which will be supplemented as additional data, discovery, and research is provided or conducted. I understand discovery is continuing in this matter, and additional information will become available in the future. I, therefore, expect to develop additional opinions in this case. Some of the known facts relied upon thus far for my opinions are:

   a. On 13 December 2018, Sindi Lucille Spray was booked into the Oklahoma County Detention Center under charges of Failure to Appear.[27]

   b. Spray's Intake Screening was conducted on 13 December 2018 at 3:50 pm by Jinna Moore.[28]

   c. Spray described symptoms of *frequent fever or chills* due to *sweating from withdrawal.* [29]

   d. Spray admitted use of Heroin, with her last use being 12 December 2018. [30] [31]

   e. Spray denied any suicidal ideation. [32]

   f. Spray was assigned to General Population with recommended *lower level/lower bunk*. [33] [34]

   g. Spray was placed under *Withdrawl/Detox Monitoring.* [35]

Page 4

---

[21] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 23.
[22] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[23] DRL 9b - Jessica Julian LPN Statement (Doc 36). Page 1.
[24] DRL 9c - Shirley Reisch RN Statement (Doc 37). Page 1.
[25] DRL 6c - Special Investigations Unit Report (Doc 28). Page 7.
[26] DRL 10a - ME Report 1 (Doc 1). Page 1.
[27] DRL 5b - Sindi Spray Booking Sheet (Doc 5). Page 1.
[28] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 1.
[29] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 1.
[30] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 6.
[31] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 58.
[32] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 4.
[33] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 4.
[34] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 6.
[35] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 6.

h. On 14 December 2018, a Drug and Alcohol Withdrawl Follow-Up Evaluation was conducted, and Spray described *nausea, vomiting, restless legs, body pain, sweats, tearing, chills, and dilated pupils.* [36]

i. Spray was prescribed *Clonidine protocol for detox and Atenolol 25mg* by Holly Martin. [37]

j. On 15 December 2018, a Drug and Alcohol Withdrawl Follow-Up Evaluation was conducted. [38]

k. Spray described *mild nausea with no vomiting,* minor tremors, mild anxiety, and mild light sensitivity. [39] [40]

l. Spray continued to deny any suicidal ideation. [41]

m. On 16 December 2018 at 9 am, Spray was seen by medical staff due to complaints of needing a breathing treatment for her asthma.[42] [43]

n. Spray *stated to the staff that she felt like she was over the worst part of her detox but still felt really bad.* [44] [45]

o. Medical staff noted that Spray *displayed no difficulties breathing.* [46]

p. At 10:37 am, a Drug and Alcohol Withdrawl Follow-Up Evaluation was conducted. [47]

q. Spray described *barely perceptible sweating, nose running or tearing,* and *mild diffuse comfort.* [48] [49]

r. Spray's medications at the time of the evaluation were Ibuprofen 200mg (for pain), Methocarbamol 750mg (for muscle cramps), Dicyclomine HCL 10mg

Page 5

---

[36] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 17.
[37] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 19.
[38] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 19.
[39] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 19.
[40] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 20.
[41] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 20.
[42] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[43] DRL 9c - Shirley Reisch RN Statement (Doc 37). Page 1.
[44] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[45] DRL 9c - Shirley Reisch RN Statement (Doc 37). Page 1.
[46] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[47] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7).). Page 21.
[48] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 21.
[49] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 22.

(for abdominal pain), Loperamide 2mg (for diarrhea), and Promethazine HCL 25mg (for nausea/vomiting). [50]

*s.* At 12:29 am, medical staff member Ginger Vann dispensed medication to Spray and observed Spray having difficulties standing. [51] [52]

*t.* At approximately 1:02 pm, Vann informed charge nurse Shirley Reisch of Spray's difficulties. [53] [54]

*u.* Charge nurse Reisch stated that Spray had been evaluated that morning, and *she is fine, there is nothing wrong with her.* [55] [56]

*v.* On 16 December 2018, around 5 pm, Spray was *found unresponsive on cell floor, reported to camera ops by inmates in other cells* [57] [58] [59]

*w.* In response to the report, Lt. Jeana Cheiress conducted a welfare check.

*x.* Lt. Cheiress found Spray unresponsive on the cell floor. [60] [61]

*y.* Lt. Cheiress began performing chest compressions. [62] [63]

*z.* The charge nurse Reisch arrived and took over chest compressions, with nurse Jessica Julian assisting. [64] [65] [66] [67]

aa. CPR was conducted until Fire arrived and took over. [68] [69] [70] [71]

Page 6

---

[50] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 22.
[51] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[52] DRL 9a - Ginger Vann Statement (Doc 35). Page 1.
[53] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[54] DRL 9a - Ginger Vann Statement (Doc 35). Page 1.
[55] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[56] DRL 9a - Ginger Vann Statement (Doc 35). Page 2.
[57] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 23.
[58] DRL 5j - Jail Incident Death Report (Doc 19). Page 1.
[59] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[60] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 23.
[61] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[62] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 23.
[63] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[64] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 23.
[65] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[66] DRL 9b - Jessica Julian LPN Statement (Doc 36). Page 1.
[67] DRL 9c - Shirley Reisch RN Statement (Doc 37). Page 1.
[68] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 23.
[69] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[70] DRL 9b - Jessica Julian LPN Statement (Doc 36). Page 1.
[71] DRL 9c - Shirley Reisch RN Statement (Doc 37). Page 1.

    bb. EMSA arrived and pronounced Spray dead at 6:19 pm. [72] [73] [74] [75]

    cc. The medical examiner listed Spray's cause of death as a *perforated duodenal ulcer.* [76] [77]

## 6. Opinions & Observations:

It is my opinion, within a reasonable degree of professional certainty, that neither Oklahoma County nor any jail employees had knowledge of any serious medical emergency and failed to provide access to medical care for the inmates housed in the OCDC in general and Inmate Sindi Lucille Spray in particular. Further, it is my opinion, to a reasonable degree of professional certainty, that none of the actions of Defendants or any of its agents fell below the recognized and accepted professional standard of care, nor were they negligent in providing for the welfare of inmates in their custody. This opinion is based upon my considered experience and the training provided to law enforcement, correctional, and jail officers throughout the United States regarding the constitutional requirements of performing their duties as set for law enforcement, corrections, and jails by the Constitution and further refined by the U.S. Supreme Court through their various rulings and decisions, State law, and State regulatory bodies.

Reasonable and trained Sheriffs, jail managers, and supervisors consider and weigh various factors when making decisions regarding penological operations. Key among these factors is *controls and services, safety, security, maintenance of good order, discipline, rehabilitation, and conserving scarce resources.*[78] Oklahoma County had clearly established penological interests in maintaining a well-managed and orderly jail. In the accomplishment of such objectives, jailers have assigned responsibilities to maintain control, order, and discipline, all while managing inmates and their care, including access to health care. During intake, Inmate Spray was questioned and observed regarding her medical history consistent with the Oklahoma County in-take policy and practice. I opine this Oklahoma County policy and practice regarding the intake of inmates into the jail is customary, certainly calculated to enhance inmate safety and security, and is known to meet industry norms and follows constitutional requirements as it pertains to the health and welfare of inmates.

Page 7

[72] DRL 5d - Sindi Spray Full Patient History 2 (Doc 7). Page 23.
[73] DRL 6c - Special Investigations Unit Report (Doc 28). Page 2.
[74] DRL 9b - Jessica Julian LPN Statement (Doc 36). Page 1.
[75] DRL 9c - Shirley Reisch RN Statement (Doc 37). Page 1.
[76] DRL 6c - Special Investigations Unit Report (Doc 28). Page 7.
[77] DRL 10a - ME Report 1 (Doc 1). Page 1.
[78] Turner v. Safley 482 US 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64. (1987).

The management of OCDC is built around a well-developed set of policies and procedures, which provide guidance for jail officers and staff. I have studied and analyzed Oklahoma County's jail policies and know these policies are well-thought-out, based on jail and correctional best practices, and contain the requisite penological interest considerations[79] that balance the operational integrity of the facility and inmate civil rights. I further opine that Oklahoma County had in place reasonable management and supervisory controls over jailers and staff to encourage compliance with these established standards and guidelines. These policies and practices follow state standards which require inmates to be provided access to health care and health care services.[80] In addition, the medical provider, Turn Key Health Clinics, also had a well-developed set of policies and procedures, which provide guidance regarding inmate health care services. I opine these policies are designed to maintain order and to care for inmates concerning their constitutional rights. There is no showing these policies and practices in any way contributed to the health concerns or death of Inmate Spray or are unconstitutional.

Specific to issues raised by Plaintiffs, I further opine on the following:

   a. *Plaintiff claims Oklahoma County showed a deliberate indifference to Inmate Sindi Lucille Spray violating her 14th Amendment Rights; Oklahoma Constitution; and Oklahoma state common law, torts, and other causes of action.*[81]

I opine within a reasonable degree of professional certainty that reasonable jail and corrections managers know the standard for judging jailers' conduct in an 8th and 14th Amendment tort action turns on whether the measures taken inflicted *unnecessary and wanton pain and suffering*.[82] This question ultimately turns on whether the jailers' actions were applied in *a good faith effort to maintain facility coherence* or were *they maliciously and sadistically imposed on the inmate for the very purpose of causing harm.*[83] [84] Further, reasonable jail and corrections managers know the 8th and 14th Amendments to the U.S. Constitution also prohibits the infliction of *cruel[85] and unusual punishment,* and the prohibition on cruel and unusual punishment has been held to forbid punishments that are *grossly disproportionate* to the crime; that are totally

---

[79] Turner v. Safley 482 US 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64. (1987).

[80] Oklahoma Administrative Code, Title 310. Oklahoma State Department of Health, Chapter 670. Jails Standards. Subchapter 5. Standards for Jail Facilities/detention Centers. 310:670-5-8 Medical Care and Health Services.

[81] DRL 1 - Amended Complaint. Page 16-22.

[82] Whitley v. Albers, 475 U.S. 312 (1986).

[83] Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

[84] Whitley v. Albers, 475 U.S. 312 (1986).

[85] John Kekes, Cruelty and Liberalism, 106 ETHICS 834, 838 (1996) Defines cruelty as "the disposition of human agents to take delight in or be indifferent to the serious and unjustified suffering their actions cause to their victims")

without *penological justification*; that involve the unnecessary and *wanton infliction of pain*; and that are *inconsistent with evolving standards of decency*.[86] [87] [88] In this light, I further opine there is no showing, in this case, that any jail or medical staff deliberately intended any of their actions to be *punishment*, and the attention given to Inmate Spray was reasonable, in accordance with policy, and determined and directed by medical staff. Further, Inmate Spray was observed and evaluated by medical staff at least twice a day from 13 December 2018 at 4:06 pm through 16 December 2018 at 1037 am during Detox/Withdrawal Protocol.[89]  It is my opinion that such actions are commonplace in jail facilities, reasonable, calculated for safety, health, and supervision, and are not *deliberately indifferent* or administered as *cruel or unusual punishment*.

In addition, reasonable Jail and correction officers know and are trained that to be considered deliberately indifferent to an inmate's serious medical needs requires that the jail staff knew, or should have known, that a serious medical condition existed and that the jail personnel failed to provide access medical attention. I opine that no evidence exists to support that jail personnel knew Inmate Sindi Lucille Spray had a serious medical need, nor did they fail to provide access to medical attention. On the contrary, when Inmate Sindi Lucille Spray was booked into jail, she claimed that she was a heroin addict and was actively going through withdrawal.[90] Reasonable, experienced, and trained corrections managers and jailers know individuals suffering from withdrawal should be referred to medical personnel for evaluation, which was done in this instance. Further, jailers and jail administrators know and understand that it is best to rely upon trained medical professionals to make medical decisions, which is evidenced in this case.

Through my review of the documents in this case, I find no evidence to support any allegation that the non-medically trained jail staff involved in this case had any actual and/or subjective knowledge of any serious medical need of Inmate Spray and failed to provide access to medical attention. Furthermore, it is critical to note that Inmate Spray was seen and evaluated by Registered Nurse J. Moore on 13 December 2018 and was seen by numerous other medical personnel from Turn Key Health Clinics from 13 December 2018 through 16 December 2018 for Withdrawal Protocol and Med Pass.[91] I opine further that it is industry best practice for County Officials, Sheriffs, Jail Administrators, and jail personnel to rely on medically trained individuals to determine

---

[86] Coker v. Georgia, 433 U.S. 584, 592 (1977).
[87] Gregg v. Georgia, 428 U.S. 153, 183 (1976).
[88] Atkins, 536 U.S. at 311–12 (quoting Trop, 356 U.S. at 101).
[89]  DRL 5d - Sindi Spray Full Patient History 2. Page 13-21.
[90] DRL 5d - Sindi Spray Full Patient History 2. Page 58.
[91] DRL 5d - Sindi Spray Full Patient History 2. Page 1-59.

the medical needs of inmates, including transfers to medical services outside the jail facilities.

b.  Plaintiff goes on to contend:

> *The actions and/or inactions of the defendant Board, Sheriff Taylor, and/or Turn Key were deliberately indifferent to Sindi Lucille Spray's need for medical care.*[92]

It appears that Plaintiff is attempting to elevate Inmate Spray's unknown and undiagnosed perforated duodenal ulcer to the level of a constitutional deficiency on the part of someone who allegedly should have had superior knowledge beyond that which was reasonably available. Evidence exists that Inmate Spray was seen on multiple occasions by medical personnel throughout her three [3] day incarceration. Inmate Spray was assessed by medical personnel upon her entry into the jail facility, was under treatment for her disclosed withdrawal from heroin, and never claimed any medical need that was not consistent with her withdrawal. Plaintiff claims that the failure to have Inmate Spray examined by a physician or failure to send her to the hospital constitutes deliberate indifference, but reasonable and trained jail professionals know that in past cases, courts have found that sheriffs and jail staff can rely upon decisions made by trained medical personnel without the court issuing an affirmative finding of deliberate indifference, even if the medical decision was in error. In this light, it is my considered opinion that reasonable and trained jail administrators, jailers, and professionals are trained that deliberate indifference would not exist in such instances.

c.  Plaintiff further contends:

> *Failed to professionally train Oklahoma County Jail detention officers with regard to observation of Jail prisoners, including Ms. Spray, in need of medical care;* [93] [94]

Jail personnel does receive training contrary to Plaintiff's contentions; OCDC jailers receive a minimum of the following:

Page 10

---

[92] DRL 1 - Amended Complaint. Page 19.
[93] DRL 1 - Amended Complaint. Page 29.
[94] DRL 1 – Amended Complaint filed 13 July 2018 - Doc. 25. Page 9.

1. A new employee shall receive orientation and training prior to job assignment by the employing agency.[95]

2. (2) All employees, including the jail administrator and all supervisors, who work in direct contact with prisoners during the first year of their employment shall receive at least twenty-four (24) hours of training that covers at least the following: [96]

    a. Security procedures;

    b. Supervision of prisoners;

    c. Report writing and documentation;

    d. Prisoner rules and regulations;

    e. Grievance and disciplinary procedures;

    f. Rights and responsibilities of prisoners;

    g. Emergency procedures;

    h. First aid and cardiopulmonary resuscitation; and

    i. Requirements of this Chapter.

3. After the first year of employment, an employee who works in direct contact with prisoners shall receive at least the following training.[97]

    a. Four (4) hours review of the required training items.

    b. Eight (8) hours training provided by the administrator; content and instructors shall be selected by the administrator.

    c. A test shall be given by the Department that covers this Chapter

---

[95] Oklahoma Administrative Code, Title 310. Oklahoma State Department of Health, Chapter 670. Jails Standards. Subchapter 5. Standards for Jail Facilities/detention Centers. Section 310:670-5-10. Training and Staff Development.

[96] Oklahoma Administrative Code, Title 310. Oklahoma State Department of Health, Chapter 670. Jails Standards. Subchapter 5. Standards for Jail Facilities/detention Centers. Section 310:670-5-10. Training and Staff Development.

[97] Oklahoma Administrative Code, Title 310. Oklahoma State Department of Health, Chapter 670. Jails Standards. Subchapter 5. Standards for Jail Facilities/detention Centers. Section 310:670-5-10. Training and Staff Development.

Any requirement for jail staff to receive medical training beyond the State of Oklahoma requirements is unfounded. In addition, the medical personnel providing services are licensed under the requirements of the State of Oklahoma. I further opine that Oklahoma County Jail was staffed with well-trained personnel and not unconstitutional toward the rights of the inmates housed in the facility, in general, and Inmate Sindi Lucille Spray.

7. **Conclusion:**

This case centers on whether the defendants, in this case, knew of a serious medical need where Inmate Spray is concerned and whether they purposefully chose not to provide medical care. It is interesting to note that testimony exists showing medical personnel engaged with Inmate Spray numerous times throughout her three-day period of incarceration. She was assessed on 13 December 20189 and placed on withdrawal protocol, which resulted in her being assessed on at least six (6) occasions. Additionally, Inmate Spray was prescribed medication to assist her with withdrawal symptoms, which was delivered to her as shown on the Medication Administration Record (MAR). Based upon the plethora of testimony and evidence showing medical contact with Inmate Spray, the defendants' actions were within constitutional parameters.

Based upon my considered experience and the training provided to law enforcement, correctional, and jail personnel, it is my considered and professional opinion Oklahoma County, the Sheriff, the Oklahoma County Jail management team, and jailers were not and cannot be seen as having knowledge of a serious medical and not giving access to medical care thereby failing to the protected rights of Inmate Spray. I further opine, within a reasonable degree of professional certainty, there is no showing in this case that the Sheriff, his management team, or jailers contemplated or exacted, cruel and unusual punishment on Inmate Spray, deprived her of any due process rights afforded by the Constitution of the United States, broke any laws, or acted in any negligent manner. Rather, the actions of Defendants were consistent with Oklahoma County Jail policy, industry best practices, and Oklahoma law.

8. **Qualifications of Expert.**
   Attachments to this report:
   a. Curriculum Vitae.
   b. A listing of cases where testimony has been offered by report, deposition, or trial.
   c. Document Review List [DRL].
   d. My agency, OSS is compensated at a rate of $160.00 per hour for my review and analysis of this matter.

Michael W. Quinn, BS, MA
Law Enforcement Advisor®
17 February 2023

Attachment A

**CURRICULUM VITAE**

of

**Michael W. Quinn, MA**
*Government, Law Enforcement, Detention, & Security Advisor*®

Contact:

**OSS – Law Enforcement Advisors**®

19018 Candleview Drive
Spring, Texas 77388
281-288-9190 Ex 226
281-288-7019 Fax
Mike.quinn@ossrisk.com

**CURRICULUM VITAE**
**of**
**Michael W. Quinn, MA**

**As of: Setember 2020**

*CURRENT EMPLOYMENT:*

## OSS - Law Enforcement Advisors® -

**Law Enforcement Advisor®** - Advisor to law enforcement agencies, detention facilities, security agencies, corporations, governmental bodies, and the legal profession throughout the United States.  A career spanning more than 26 years in law enforcement.  Over twenty-six years as a licensed peace officer serving with the Harris County Sheriff's Department.

**Law Enforcement Instructor -** Over thirty years as a licensed law enforcement instructor. Instructor at law enforcement agencies and state-approved academies. Adjunct Criminal Justice Professor for San Jacinto College.  Guest instructor at the University of Houston, local law enforcement agencies, police academies, and civic organizations.

*LAW ENFORCEMENT & CORRECTIONS:*

*BOARD CERTIFICATIONS, LICENSES, & APPOINTMENTS (current and past)*

Certified Correctional Healthcare Professional, National Commission on Correctional Healthcare.

Licensed Instructor, Texas Commission on Law Enforcement.

Licensed Jailer, Texas Commission on Law Enforcement.

Licensed Peace Officer, Texas Commission on Law Enforcement.

Licensed Reserve Peace Officer, Texas Commission on Law Enforcement.

Master Peace Officer Certified, Texas Commission on Law Enforcement.

*EXPERIENCE & ACCOMPLISHMENTS:*

Certified, licensed and commissioned as a Texas Peace Officer for over twenty-six years.  Served as one of the top executives for the Harris County Sheriff's Department reaching the rank of Major.  Attained twenty-six years of progressively responsible experience in all aspects of planning and administration for the nation's third largest Sheriff's Department (Houston, Texas).

Management experience with every aspect of 3,400-member law enforcement agency and as an executive level manager for more than 15 years (26-year career). Duty assignments included supervisory responsibilities in patrol, criminal investigations, communications, human resources, technical services, special services, and jail operations.

In my 26 years with the Harris County Sheriff's Offices, my duties and responsibilities were generally split between jail and non-jail assignments.  I served 12 years and 6 months in virtually every facet of patrol, investigations, and management and 13 years and 6 months in a variety of assignments in jail operations.  Relating to detention operations, I served in the capacity of a licensed jailer, a shift sergeant, a shift lieutenant, the administrative lieutenant, jail captain, and Bureau Major.  Each of these enforcement and corrections positions carried additional authority and responsibilities.

As Major over Support Services, responsible for producing systematic operational policies, practices, and procedures for the third largest Sheriff's Department in the U.S.  Management responsibilities included: preparation, presentation, and implementation of a $256 million departmental budget personnel recruiting and training; employee personnel records; disciplinary actions; internal investigations; worker's compensation; payroll; employee benefits; insurance; employee relations; and department response to federal law complaints (FMLA, ADA, EEO, DOL).  Supervisory responsibility for the recruiting, testing, and hiring of the largest increase of personnel in departmental history; over 1,000 new deputies in 14 months.

Served as a supervisor and team member responsible for the oversight, project management, budgetary control and delivery of three major jail construction projects: a 1,000 bed a 3,500-bed facility and a 4,000-bed facility.  Facilities were delivered on schedule and within budget.

As the Major over Inmate Health Service, I developed and implemented strategic plans, which led to the close of a federal lawsuit mandating the delivery of health care to inmates under constitutional conditions.  Through a partnership with the University of Texas Medical School, the first jail-based medical school program was created.  These efforts resulted in the Harris County Jail Medical Division becoming accredited under the National Commission on Correctional Health Care,

a first time ever designation.

Awarded  promotions from entry-level deputy to one of six Majors.
Oct. 1974 – Entry Level Deputy
Oct. 1976 – Promoted to Sergeant
Apr. 1978 – Promoted to Lieutenant
May 1980 – Promoted to Captain
Jan. 1987 – Promoted to Major

Previously named, the first ever, Deputy Executive Director for the Alamo Area Council of Governments (AACOG).  The Alamo Area Council of Governments (AACOG) is a voluntary association of cities, counties, and special governmental districts. AACOG serves the Alamo Area/State Planning Region 18, which covers 12 counties and 11,354 square miles.

The Deputy Executive Director has direct responsibility for the following programs:

- Regional 911 Program – the AACOG 911 Program serves 191,773 residents with 89,836 landlines being reported in 2009.  During 2008 there were over 102,874 911 calls placed to the Public Safety Answering Points (PSAP) with 68% of the calls being wireless calls.  The annual budget for the FY2009 AACOG 911 Program is $1,398,541.

- Homeland Security Program – the Homeland Security Program provides assistance and support to governmental entities and First Responders in formulating a regional strategy necessary to access funding to address any disaster whether weather-related or man-made.

- Criminal Justice Planning Program – acts as a catalyst for positive change and innovation through regional agencies and to enhances the quality of life for residents of the Alamo Region by providing services that facilitate the effective planning, implementation, and assessment of regional criminal justice initiatives.

- Alamo Regional Law Enforcement Training Academy - provides innovative, visionary, timely and comprehensive law enforcement training to our region's Peace Officers, Corrections Officers, and Emergency Telecommunications Officers.  Since 2006, the Academy provides 450,000 classroom contact hours of instruction to 23,100 professionals.

- Alamo Area Agency on Aging – The Alamo Area Agency on Aging (AAAA) serves 11 rural counties - Atascosa, Bandera, Comal, Frio, Gillespie, Guadalupe, Karnes, Kendall, Kerr, Medina, and Wilson. The agency is dedicated to building a community that supports older residents

and allows them to age in place with dignity, security, and enhanced quality of life. The range of services provided includes congregate meals, home-delivered meals, benefits counseling, care coordination, legal assistance, nutrition counseling and training, caregiver support, and transportation services.

- Alamo Local Authority – formerly the Bexar MRA -- provides the following community services and supports for eligible adults and children with intellectual and developmental disabilities and their families in Bexar County:

  o Eligibility Determination
  o Consumer Benefits Screening
  o Service Coordination
  o Medicaid Waiver Programs
  o Assisted Residential living
  o Community Options

- Bexar Area Agency on Aging – AACOG's Bexar Area Agency on Aging (BAAA) serves the City of San Antonio and Bexar County.  The agency is dedicated to building a community that supports older residents and allows them to age in place with dignity, security, and enhanced quality of life. The range of services provided includes congregate meals, home-delivered meals, benefits counseling, care coordination, legal assistance, nutrition counseling and training, caregiver support, and transportation services.

- Alamo Regional Transit (ART) – Alamo Regional Transit (ART) serves 11 rural counties - Atascosa, Bandera, Comal, Frio, Gillespie, Guadalupe, Karnes, Kendall, Kerr, Medina, and Wilson. ART provides public transportation bus service to all residents in the service region. Service to and from Bexar County and San Antonio is also provided. ART provides demand response, curb-to-curb transportation service. Door-to-door service may be requested for those customers needing additional mobility assistance.

- Agency Human Resources – Human Resources is responsible for carrying out all the activities essential to the effective administration of the personnel function.

These activities include:

  o Administering the position, classification, and pay plan
  o Assisting departments in the areas of recruitment, selection, placement, and training of employees
  o Maintaining personnel records

o   Administering all benefits

## *AWARDS & RECOGNITIONS:*

San Jacinto College Criminal Justice Advisory Board, Past Member.

Academic Recognition Award, Summa cum Laude from Alvin Community College 1993.

Academic Recognition Award, Phi Theta Kappa Society, International Scholastic Order, Alvin Community College.

Academic Recognition Award, Alpha Phi Sigma, National Criminal Justice Honor Society, University of Houston.

Academic Recognition Award, Magna cum Laude from University of Houston 1995.

Academic Recognition Award, Criminal Justice Student of the Year for University of Houston 1995.

Subject Matter Expert and Departmental Liaison for Harris County Texas on the constitutional conditions for inmates incarcerated in the Harris County Jail System.

## *SAMPLE of POLICE EDUCATION & TRAINING ATTENDED:*

Basic Reserve Peace Officer Training
       Harris County Sheriff's Academy

Basic Law Enforcement Training Academy
       Harris County Sheriff's Department

Basic Jail Course
       Harris County Sheriff's Academy

Intermediate Law Enforcement Proficiency Course
       North Central Texas Regional Police Academy

Instructor Development Course
       Harris County Sheriff's Academy

Bomb Investigation

Federal Bureau of Investigation

Patrol & Tactical
Harris County Sheriff's Academy

Investigations
Sheriff's Association of Texas

Special Investigative Topics
Harris County Sheriff's Academy

Management & Supervision
Bill Blackwood LEMI of Texas

Crisis Intervention Team Training
Harris County Mental Health & Mental Retardation Association

Range Safety Officer Course
Harris County Sheriff's Department

Cultural Diversity
Harris County Sheriff's Academy

Low Light Shooting Techniques
Harris County Sheriff's Academy

Advanced Low Light Shooting Techniques
Harris County Sheriff's Academy

Family Violence and Child Sexual Abuse
Harris County Sheriff's Academy

Basic Baton
Harris County Sheriff's Academy

Legal Aspects of Law Enforcement
Alvin Community College

Law Enforcement Liability
TCOLE & OSS Academy

Law Enforcement Systems and Practices
Alvin Community College

Criminal Investigation
　　　Alvin Community College

Law Enforcement Ethics
　　　University of Houston

Constitutional Rights of the Accused and Convicted
　　　University of Houston

Public Policy Implementation
　　　University of Houston

Police and Public Budgeting
　　　University of Houston

Administrative Law
　　　University of Houston

Emergency Management
　　　University of Houston

Patrol Procedures
　　　University of Houston

Community Policing
　　　University of Houston

Terrorism Awareness for Emergency First Responders
　　　City of San Antonio Fire Department

Sex Crimes Investigations
　　　Harris County Sheriff's Academy

Legal Liabilities for Jailers
　　　Harris County Sheriff's Academy

Legal Standards and Liabilities for Law Enforcement Officers
　　　Harris County Sheriff's Academy

Vehicle Pursuit
　　　TCOLE & OSS Academy


***EDUCATION:***

Page 8

***PUBLIC SCHOOLS***

High School, North Shore High School, Houston, Texas.

**UNIVERSITY & College Attendance**

The University of Houston, Houston, Texas.
        Master of Arts Degree, Public Administration

The University of Houston, Houston, Texas.
        Bachelor of Science Degree, Criminal Justice

Alvin Community College, Alvin, Texas
        Associates of Applied Science Degree, Criminal Justice

***EDUCATIONAL EXPERIENCE & POSITIONS:***

Instructor, Harris County Sheriff's Academy, Houston, Texas

Adjunct Professor, San Jacinto College, Houston, Texas

Guest Professor (non Paid), University of Houston, Houston, Texas (as University of Houston was my alma mater, my quest appearances were a way for me to give back to the University).

Guest Instructor, Ronald Reagan High School, Criminal Justice Program, San Antonio, Texas.

OSS – LAW ENFORCEMENT ADVISORS®

ATTACHMENT B

MICHAEL W. QUINN
TESTIMONY – DEPOSITION – AFFIDAVIT – REPORT
OCTOBER 1974 THRU SEPTEMBER 2022

## Law Enforcement Criminal Courts:

1. During twenty-six years in law enforcement with the Harris County Sheriff's Department, I have offered testimony, depositions, affidavits, and reports in State Criminal District Courts, Civil District Courts, Special District Courts, County Courts at Law, and Justice of the Peace Court cases too numerous to list.

## Federal District Court:

2. Defense – Report (2010) – Sandra Kay Pruitt et al vs. Quitman County, Mississippi, & Sheriff Oliver Parker et al. In the United States District Court Northern District of Mississippi Delta Division. Case No. 2:09-CV-121-P-S.

3. Defense – Report (2010) – Craig Neely vs. Lance Hood, & Jim Johnson. In the United States District Court for the Northern Divisions of Mississippi, Eastern Division. Civil Action No. 1:07CV260-MPM-JAD.

4. Defense – Report (2010) – Inmates of Northumberland County Prison, through Scott Collins, Roman Brady, Jeremy Elsesser, Conrad Corley, Michael Wetzel, Hasson Lindsey, Thomas Anderson, Joseph Bowers, Sharon Relchner, Megan Holohan, Kelcie Williams and Sonya Wayland, Plaintiffs vs. Ralph Reish, in his official capacity as Warden of Northumberland County Prison, Frank Sawicki, Vinny Clausi, Kurt Masser, Anthony Rosini, Charles Erdman, Robert Sacavage, Chad Reiner, in their official capacities as members of the Northumberland County Prison Board, and Northumberland County Pennsylvania, Defendant. In the United States District Court for the Middle District of Pennsylvania. Case No. 4:08-CV-00345.

5. Defense – Report (2012) – Carrie Allen Speck, Barbara Allen Sitler, Ronald Chet Allen, Lisa Jackson, individually and as the wrongful death beneficiaries of Cayce Allen, deceased, Estate of Cayce Allen, Plaintiffs vs. Desoto County, Mississippi, Jane Thompson, individually, Defendants. In the US District Court Northern District of Mississippi Delta Division. Case No. 2:08CV95-P-A.

6. Defense – Report (2012) – Joseph Conway Manus, Plaintiff vs. Webster County, Mississippi; et al., Defendants. In the US District Court for The Northern District of Mississippi Eastern Division. Civil Action No.: 1:11-CV-00149-SA-DAS.

7. Defense – Expert Affidavit (2012) – Kenneth Brown vs. Gulfport Police Department, Chief of Police for the Gulfport Police Department, Alan Weatherford, as yet unnamed Gulfport Police Officers, and the City of Gulfport through Mayor George Schloegel. In the United States District Court for the Southern District of Mississippi, Gulfport Division. Civil Action Number: 1:10CV405 LGRHW.

8. Defense – Report (2011) – Dwayne Province, Individually, Plaintiff vs. City of Detroit, Michigan, a municipal corporation; County of Wayne, a municipal corporation; David Moore, in his individual capacity, Defendants. In the US District Court for the Eastern District of Michigan, Southern Division. Case No. 2:10-CV-11719-DPH-VMM.

9. Defense – Report (2012) – Deposition (2012) – Robert Shreve, et al, Plaintiffs vs. Franklin County, Ohio, et al., Defendants. In the US District Court for The Southern District of Ohio Eastern District. Case No. 2:10-cv-644.

10. Defense – Report (2013) – Deposition (2014) – John C. Ruiz-Bueno, III, Administrator of the Estate of Edward Peterson, et al, Plaintiff vs. Franklin County Sheriff Zack Scott, et al., Defendant. In the US District Court for The Southern District of Ohio Eastern District. Case No. 12-CV-00809.

11. Plaintiff – Report (2012) – Deposition (2013) – Lisa Bean-Kemp, et al vs. City of Houston, et al. In the US District Court for The Southern District of Texas, Houston Division. Civil Action No. 4:10-cv-03111.

12. Plaintiff – Report (2014) – Christopher Ensign, Plaintiff vs. City of Jasper, Texas, Defendants. In the US District Court Eastern District of Texas Beaumont Division. Case No.: 1:12-CV-00306.

13. Defense – Report (2014) – Deposition (2014) – Laura V, Lopez-Aguirre, Administrator of the Estate of Julio Aguirre, et al., Plaintiffs, vs. Board of County Commissioners, Shawnee County, Kansas et al., Defendants. In the US District Court for The District of Kansas. Case No. 12-CV-02752.

14. Plaintiff – Report (2014) – Vincent Croom, as a personal Representative of the Estate of Aaron Jacobs, Plaintiffs vs. Sumter Police Department and South Carolina Law Enforcement Division, Defendants. In the US District Court for the District of South Carolina Columbia Division. Cause No. 3:12-CV-03343-TLW.

15. Defense – Report (2014) – Mary Owens, as a person Representative of the Estate of Stephen Stiles vs. Kent County, et al. In the US District Court for The Western District of Michigan. Case No. 1:13-cv-00478-JTN.

16. Defense – Report (2014) – Robert Stewart, Plaintiff vs. The County of Chester Pennsylvania, Donald Moeller, Valerie McCormack, J. Wideman, Prime Care Medical Inc., Cheryl Boyd LPN, Cornadeneen Blakely MA, Defendants. In the US District Court for The Eastern District of Pennsylvania. Civil Action No. 2:12-cv-01509.

17. Defense – Report (2014) – Anita Williamson, by and through Christina Ward, Administratix of the Estate of Anita Williamson vs. Hamblen County, Tennessee – US District Court for The Eastern District of Tennessee at Greenville. Case No.: 2:12-cv-0038-JRG-DHI

18. Defense – Disclosure (report) (2014) – Wilma D. Miller, Individually and as administratrix of the Estate of Melanie Nicole Miller, Deceased, Plaintiff, vs. County Commission of Randolph County d/b/a Office of Emergency Management of Randolph County, Elkins-Randolph County Emergency Squad, Inc., Randolph County EMS Volunteers Elkins Unit, Inc. d/b/a EMS Volunteers, and City of Elkins, West Virginia. In the Circuit Court of Randolph County, West Virginia. Civil Action No. 12-C-31.

19. Defense – Report (2015) – Deposition (2015) – Angela Davis and D.H. Plaintiff vs. Roane County, et al., a minor, individually on behalf of Crystal Marlena Price, deceased, Plaintiff, vs. Roane County, et al., Defendants. United States District Court Eastern District of Tennessee at Knoxville. Case Nos. 3:12-cv-00634/3:12-cv-0673

20. Defense – Report (2015) – Trial (2016) – Lloyd Trevino, Individually & as Representative of the Estate of Jason Trevino vs. J. Greenhaw & The City of Houston. In the United States District Court for the Southern District of Texas, Houston Division. Case No. 4:13-cv-00427

21. Plaintiff – Report (2014) – Georges-Lucien De Ratafia & Diane Ackroyd, Plaintiffs, v. The County of Columbia, a political subdivision of the State of New York, Sheriff David W. Harrison, Jr., in his individual and official capacities, Deputy Sheriff David Proper, in his individual and official capacities, Deputy Sheriff Todd Hyson, in his individual and official capacities, Deputy Sheriff David Rose, in his individual and official capacities, and Henry Meleck a/k/a Henry Wrenn-Meleck, Defendants. United States District Court, Northern District of New York. Civil Action No. 1:13-CV-174 (NAM/RFT).

22. Plaintiff – Report (2016) – Deposition (2016) – Michael Cousin, Et al v. St Tammany Parish Jail, et al. United States District Court Eastern District of Louisiana. Civil Action No.: 14-1514.

23. Defense – Report (2015) – Michelle Anzovino, Plaintiff, vs. Andrew Pallito, Commissioner of the Department of Corrections; P. Mark Potonas, Superintendent, Southern State Correctional Facility; CFSS Christopher P. Phillips, CFSS Scott E. Isenor COII Robert L. Combs, COI Jacquelyn Alvarado, COI William Delaney, COI Cathy Grybos, Defendants. United States District Court for the District of Vermont. Case No. 5:14-CV-83

24. Defense – Report (2015) – In the United States District Court for the District of New Jersey; Aaron Sheppard, Plaintiff; vs Officer Jeffrey Zavis, et al., Defendants. Civil No. 11-2398 (NLH-KMW)

25. Defense – Report (2016) – Miranda Silvers as surviving daughter, Of the decedent Nathan Alan Silvers, Plaintiff, v. Unicoi County, Tennessee, Unicoi County Sheriff's Department Corrections Officers, Stuart Jackson, Marceus Martinez Kenny Jones, Josh Johnson, Nicholas Wyatt and Carol Mumpower all sued in their Individual and Official Capacities, Defendants. United States District Court Eastern District of Tennessee at Greeneville. No: 2:15-cv-00084-JRG-MCLC.

26. Defense – Report (2016) – Deposition (2016) – Donald Pinnock, Personal Representative of the Estate of Jonathan Michael Everage, Deceased; and Anastasia Everage, as Mother and Next Friend of Harly M. Everage and Bryan M. Everage, Minors, Plaintiffs vs Board of County Commissioners of Grant County; Raul Villanueva, Sheriff of Grant County; Manuel Maldonado, Deputy Sheriff of Grant County; William Mize, Corporal, Sheriff Department of Grant County; and Mike Jimenez, Grant County Jail Administrator, Defendants. In the United States District Court District of New Mexico. Case No. 1:14-cv-00293-JCH/WPL.

27. Plaintiff – Report (2016) - Jennifer R. Marks, Plaintiff vs. St. Tammany Parish Sheriff's Office, Sheriff Jack Strain, Jr, in his Capacity as Sheriff of the Parish of St. Tammany, Deputy Bryan R. Steinert, Deputy Samuel Hyneman, Corporal Amore Neck, and the Travelers Indemnity Company, Defendants. In the United State District Court Eastern District of Louisiana.

28. Plaintiff – Report (2017) - Bryan T. Wagner, Plaintiff versus City of City of Hammond, Hammond City Jail, Hammond City Police, Chief Roddy Devall, Personally and in his Capacity as Police Chief, Officer Matthew Schenk, Officer, Ryan D. Bergeron, & officer Jason O'Quinn Defendants. United States District Court Eastern District of Louisiana.

29. Defense – Report (2016) - Donald Pinnock, Personal Representative of the Estate of Jonathan Michael Everage, Deceased; and Anastasia Everage, as Mother and Next Friend of Harly M. Everage and Bryan M. Everage, Minors, Plaintiffs vs Board of County Commissioners of Grant County; Raul Villanueva, Sheriff of Grant County; Manuel Maldonado, Deputy Sheriff of Grant County; William Mize, Corporal, Sheriff Department of Grant County; and Mike Jimenez, Grant County Jail Administrator, Defendants. In the United States District Court District of New Mexico. Case No. 1:14-cv-00293-JCH/WPL.

30. Plaintiff – Report (2016) - Gerald Ronald Leato, Plaintiff, vs. Cook County, et al., Defendants. In the United States District Court Northern District of Illinois Eastern Division. Case No. 14 cv 454.

31. Defense – Report (2016) - Neil Greening, Plaintiff, v Maggie Miller-Stout, Jim Dyson, Fred Fox, sued in their individual and official capacities, Defendants. United States District Court Eastern District of Washington. Case No. CV-09-389-JPH.

32. Defense – Report (2017) - In the United States District Court for the Eastern District of Oklahoma. Kim Grizzle, and Twila Grizzle, as Co-Personal Representatives of

the Estate of Malinda Yvonne Lindley, deceased,; Plaintiffs, v. John Christian, in his official capacity as Sheriff of Pontotoc County, Okla., Arnold Scott, Undersheriff of Pontotoc County, Okla., Mike Sinnett, Pontotoc County Justice Center Administrator, Brian Engel, The City of ADA, Okla. ex rel. ADA Police Department, Jeffrey Dale Black, Malinda Jean Shaffer, Chloe Biana Spatz, Linda Sue Rogers, Brenda Kay Brown, Chelsea Dawn Stout,  Johnny Dale Walker,  David Ray Blankenship,  Clinton Allen Cooper, Adam Joshua Rouden, Kevin Christian Clark, and Taylor Harold Wood. Case No. 16-CV-254-SPS.

33. Defense – Report (2017) -  Diane Martin, as Personal Representative of the Estate of Emmett S.  Martin, Deceased, and Diane Martin, as Mother and Next Friend of S. M., a minor Plaintiffs, v. The Board of County Commissioners for the County of Oklahoma County, the Oklahoma County Sheriff, John Whetsel, in his official and individual capacity Andres Sanchez, in his individual Capacity, Jeana Marie Chairess, in her Individual capacity, Mario Bell Edwards, in his Individual capacity, Brent Zweifel, in his individual Capacity, Jaime McGuckin, in his individual Capacity, Scott Ely, in his individual Capacity, Vickey McDonald, in her Individual capacity, and Sharon Martin, in her individual Capacity Armor Correctional Health Services, Inc., Defense. In the United States District Court for the Western District of Oklahoma. Case No. CIV-15-0677-F.

34. Defense - Report (2017) -   Kim Grizzle, and Twila Grizzle, as Co-Personal Representatives of the Estate of Malinda Yvonne Lindley, deceased, Plaintiffs, v. John Christian, in his official capacity as Sheriff of Pontotoc County, Okla., Arnold Scott, Undersheriff of Pontotoc County, Okla., Mike Sinnett, Pontotoc County Justice Center Administrator, Brian Engel, The City of Ada, Okla. Ex rel. Ada Police Department, Defendants. In the United States District Court for the Eastern District of Oklahoma. Case No. 16-CV-254-SPS.

35. Plaintiff - Report (2017) -  Jo Ann Percy, Administratrix of the Estate of Jeffrey Jerome Leggette, Deceased Plaintiff, vs. Hinds County, Mississippi; Malcolm E. McMillin, In His Individual And Official Capacity As Sheriff Of Hinds County, Mississippi; Robert Graham, Douglas Anderson, Peggy Hobson Calhoun, Phil Fisher and George Smith, In Their Official Capacities As Members Of The Hinds County Board Of Supervisors Of Hinds County, Mississippi; Captain H. H. Cooley, In His Individual And Official Capacity As Hinds County Detention Center at Raymond Facility Commander; Lieutenant Stanley Thurmond; Sergeant Shannon Brumfield; Corporal Quinton Powell, In Their Individual And Official Capacities As Jail Administrators; Michael L. McWilliams, Jerry Durham; Larry Davis, In Their Individual Capacities As Jail Deputies and Detention Center Officers; Lieutenant Shelby Barlow and Lamekia Gee, In their Individual And Official Capacities as Jail Booking Department Employees Defendants. In the United States District Court

for the Southern District of Mississippi Jackson Division. Civil Action NO. 3:09cv-687-WHB-LRA.

36. Criminal Defense – No Report (2017) - State of Texas v. Otis R. Jarmon.

37. Plaintiff – Report (2017) - In the United States District Court for the Southern District of Mississippi Jackson Division. Jo Ann Percy, Administratrix of the Estate of Jeffrey Jerome Leggette, Deceased, Plaintiff vs. Hinds County, Mississippi; Malcolm E. McMillin, In His Individual And Official Capacity As Sheriff Of Hinds County, Mississippi; Robert Graham, Douglas Anderson, Peggy Hobson Calhoun, Phil Fisher and George Smith, In Their Official Capacities As Members Of The Hinds County Board Of Supervisors Of Hinds County, Mississippi; Captain H. H. Cooley, In His Individual And Official Capacity As Hinds County Detention Center at Raymond Facility Commander; Lieutenant Stanley Thurmond; Sergeant Shannon Brumfield; Corporal Quinton Powell, In Their Individual And Official Capacities As Jail Administrators; Michael L. McWilliams, Jerry Durham; Larry Davis, In Their Individual Capacities As Jail Deputies and Detention Center Officers; Lieutenant Shelby Barlow and Lamekia Gee, In their Individual And Official Capacities as Jail Booking Department Employees, Defendants. Civil Action No.3:09cv-687-WHB-LRA.

38. Criminal Defense – No Report (2017) - Texas v. Otis Jarmon.

39. Plaintiff – Report (2017) - David D. Austin II, Plaintiff, V. Judy P. Smith, Warden, Oshkosh Correctional Institution, Individually and In Her Official Capacity, Edward Wall, In His Individual Capacity, Rexford Smith, Unit Manager, R-Unit, Oshkosh Correctional Institution, Individually and In His Official Capacity, Jon Litscher, Secretary, Wisconsin Department of Corrections. In His Official Capacity, Defendants. United States District Court Western District of Wisconsin. Case No. 15-CV-525-jdp.

40. Defense – Report (2018) - Steven C. Smith, as Conservator for Brandon Jeffries, Plaintiff v. Travis Turner, Kevin Nelson, Tony Davis, Jr., Bridgette Goode, Joseph Bell, Earnest Goode, Jr., James Bonner, Kieyun Washington, Ira Kennington, Walter Anderson, Joshua Wilson, Melanie Thompson, Naphcare U.S., Inc., doing business as Naphcare, Inc., Sheila Caulton, Sam Cochran, Noah Price "Trey" Oliver III, Defendants. In The United States District Court for The Southern District of Alabama Southern Division. Case No. 1:15-CV-371.

41. Defense – Report (2018) - Johna Gonzales, Plaintiff, v. County of Taos, and Taos County Board of Commissioners, Defendants. In the District Court of the United States for the District of New Mexico. Civil No. 17-CV-00582 NF/KHR.

42. Criminal Defense – No Report (2018) - Texas v. Brian Williams.

43. Plaintiff – Report (2018) - Estate of Princola Shields, by Debra Shields as Personal Representative and Debra Shields, individually, Plaintiffs, v. Bruce Lemmon, Commissioner Indiana Department of Corrections, Steven McCauley,

superintendent of Indiana Women's Prison, Corizon Health, INC., Sonya Johnson, Danielle Katterhenry, Jessica Jonas, Keith Ray, Deja Lewis, Renee Todd, Pamela Kirkwood, R.N., Julie Murphy, R.N, Jana Cuffel, R.N., Dr. James Sackett, Daniel Prober, M.D., MS. Weaver, Debbie Durham, LPN, Shonda T. Simon, LPN, William L. Barnett, MHP, Stephen R. Hill, D.O., Vickie Burdine, M.D., Krista Cox, D.O., Patricia Waltman, M.D., Janet O'Neal, Talitha Moschell German, RN, and Keisha Hamer, LPN, Defendants. In the United States District Court Southern District of Indiana, Indianapolis Division. Case No. 1:16-cv-2148.

44. Defense – Report (2018) - Jerome Bartee, Jr., Plaintiff, vs. Harris County; and Andrew Rowell, Jeremy Ringle, and Salvador Garibay in their Individual Capacities, only Defendants. In the United States District Court for The Southern District of Texas Houston Division. Civil Action No. 4:16-cv-02944.

45. Defense – Report (2018) - Audrey Myers, Personal Representative of Estate of Michael Edwin Smith (now Deceased). Plaintiff, v. Board of County Commissioners, Muskogee County; Rob Frazier, Sheriff of Muskogee County, in his Official Capacities; Turn Key Health Clinics, LLC; Does II through XX; Defendants. In the United States District Court for the Eastern District of Oklahoma. No. 17-CV-90 RAW.

46. Defense – Report (2019) - Zachary Rowell, as Special Administrator in the Matter of the Estate of Marvin A. Rowell, and Individually, Plaintiff, vs. Board of County Commissioners of Muskogee County, Oklahoma, Dakota West, in his Individual Capacity, Jacob Slay, in his Individual Capacity, Lacy Rosson, in her Individual Capacity, and Sheriff Rob Frazier, in his Official Capacity, Defendants. In the United States District Court for the Eastern District of Oklahoma. Case No. 18-CV-00125-RAW.

47. Defense – Report (2019) - James D. Buchanan, Plaintiff, vs. 1) Turn Key Health Clinics, LLC, (2) Rob Frazier, in his official capacity as Muskogee County Sheriff, (3) Board of County Commissioners of Muskogee County, (4) Dr. Cooper, and (5) Katie McCullar, LPN, Defendants. In the United States District Court for the Eastern District of Oklahoma. Case No. 18-CV-171-RAW.

48. Defense – Report (2019) - (1) James Legros, Sr. and (2) Jacqueline Milioto, as Next Friend to D.M., a Minor, As Next Of Kin Of James Legros, Jr., Deceased, Plaintiffs, VS. (1) Board of County Commissioners For Choctaw County; (2) Terry Park, In His Individual And Official Capacities; (3) Edna Casey, In Her Individual and Official Capacities; (4) Schonna Smith, in her Individual Capacity; (5) Jeffery Epley, in his Individual Capacity; (6) Stewart Stanfield, in his Individual Capacity; (7) Zach Dillishaw, in his Individual Capacity; (8) Debora Clay, in her Individual Capacity; Defendants. In the District Court of Choctaw County State of Oklahoma. Case No. CJ-2017-00058..

49. Defense - Report (2020) - PATRICIA HANNAH, as plenary legal guardian of Darryl Vaughn Hanna, Jr., an individual, Plaintiff, -vs- ARMOR CORRECTIONAL HEALTH SERVICES, INC., a Florida For-Profit Corporation, LEILA POLANCO, Individually and as an employee of Armor Correctional Health Services, Inc., CARMA OGLINE, Individually and as an employee of Armor Correctional Health Services, Inc. BERNARD MONTAYRE, Individually and as an employee of Armor Correctional Health Services, Inc., PAULA SANDERS, Individually and as an employee of Armor Correctional Health Services, Inc., ROSE MARIE GRETHER, Individually and as an employee of Armor Correctional Health Services, Inc. DAVID CHARLES GRETHER, JR., Individually and as an employee of Armor Correctional Health Services, Inc. ELVIRA PEREZ, Individually and as an employee of Armor Correctional Health Services, Inc., RICK WELLS, in his official capacity as Sheriff of the Manatee County Sheriff's Office, RONALD LAUGHLIN, Individually and as an employee or agent of Manatee County Sheriff's Office, BOARD OF COUNTY COMMISSIONERS - MANATEE COUNTY, FL, in its official capacity acting on behalf of a political subdivision of Florida, Defendants. In the United States District Court In and For the Southern District of Florida. Case No.: 19-cv-596-JSM-SP.

50. Defense - Report (2021) - In the UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN. MARIO AVILA, JR. Plaintiff; STATE OF WISCONSIN – DEPARTMENT OF HEALTH SERVICES, ADMINISTRATOR OF HEALTHCARE FINANCING ADMINISTRATION (THE UNITED STATES GOVERNMENT – MEDICARE) Subrogated Involuntary Plaintiffs; v. U.S. CORRECTIONS, LLC, PRISONER TRANSPORTATION SERVICES, INC., JASON WILLIAMS, THOMAS FIGONI, LUIS F. GONZALEZ, DAMIEN J. LOWE, THAYER KIM TOWNSEND, CHRISTOPHER SNOW, ASHLEY JACQUES And CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. CJ10028616. Defendants. Case NO: Case No. 20 CV 51.

51. Defense – Report & Trial (2021) – IN THE DIVISION OF CLAIMS ADMINISTRATION FOR THE STATE OF TENNESSEE. ESTA TE OF BRANDI MICHELLE LUNDY a/k/a Brandi Hibdon, by and through her Personal Representative, husband and next friend, PAUL B. LUNDY, Plaintiff, vs. TENNESSEE DEPARTMENT OF CORRECTIONS, Defendant. CASE NO. T2019-1358.

52. Defense – Report (2022) - IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA. UNITED STATES OF AMERICA, Plaintiff, v. MOBILE COUNTY SHERIFF'S OFFICE and MOBILE COUNTY SHERIFF SAM COCHRAN (in his official capacity), Defendants. Case 1:21-cv-00114.

**OSS-Law Enforcement Advisors®**

**Attachment C**

**Document Review List**

<span style="color:red">**Work In-Progress**</span>

**As of: 17 February 2023**

*William Ray Spray, Jr., and Rhonda Jean Spray, Individually and as Personal Representatives of the Estate of Sindi Lucille Spray, Deceased, Plaintiff, v. 1. Board of County Commissioners of Oklahoma County, In its Official Capacity as Governing Body of the County of Oklahoma County, Defendants. Case No. CIV-20-1252-C*

1. Amended Complaint (Doc 14)
2. Scheduling Order (Doc 27)
    a. Updated Scheduling Order (Doc 29)
    b. Court Scheduling Order 3 (Doc 31)
3. Plaintiff's Documents
    a. Plaintiff's Answers to Interrogatories (Doc 29)
    b. Plaintiff's Initial Disclosures (Doc 28)
    c. Letters of Administration
    d. Order Appointing Personal Representative and Determining Heirs
4. Defendant's Documents
    a. Pottawatomie County Subpoena Duces Tecum (Doc 12)
    b. BOCC Answer (Doc 23)
    c. BOCC Rule 26 Disclosures (Doc 0)
5. Oklahoma County Detention Center Records
    a. Booking Documents 121318 (Doc 3)
    b. Sindi Spray Booking Sheet (Doc 5)
    c. Sindi Spray Full Patient History (Doc 6)
    d. Sindi Spray Full Patient History 2 (Doc 7)

    e.  OCDC Medical Records Spray (Doc 8)

    f.  OCDC Cell Check Compliance Report 6th Floor 0600-1800 (Doc 10)

    g.  OCDC Cell Check Compliance Report 6th Floor 1800-0600 (Doc 11)

    h.  Charlie Log Book 002 (Doc 15)

    i.  Camera Ops Logsheet (Doc 17)

    j.  Jail Incident Death Report (Doc 19)

    k.  2016 and 2017 IRs and Death Investigations for OK County

6.  Oklahoma County Sheriff's Office Records

    a.  Administrative Investigation Advisement (Doc 16)

    b.  Crime Scene Log (Doc 18)

    c.  Special Investigations Unit Report (Doc 28)

    d.  Oklahoma County Sheriff Office Jail Facility Report Form – Breshers (Doc 29)

    e.  Oklahoma County Sheriff Office Jail Facility Report Form – Gulikers (Doc 30)

    f.  Oklahoma County Sheriff Office Jail Facility Report Form – Chairess (Doc 31)

    g.  Oklahoma County Sheriff Office Jail Facility Report Form – Nelson (Doc 32)

    h.  Oklahoma County Sheriff Office Jail Facility Report Form – West (Doc 33)

    i.  Oklahoma County Sheriff Office Jail Facility Report Form – Edwards (Doc 34)

7.  Oklahoma PMP Investigative Patient Report (Doc 20)

8.  Turn Key Health Sentinel Event Review (Doc 21)

    a.  Letter from Turn Key to Greg Williams

9.  Medical Statements

    a.  Ginger Vann Statement (Doc 35)

    b.  Jessica Julian LPN Statement (Doc 36)

    c.  Shirley Reisch RN Statement (Doc 37)

10. Medical Examiner Reports

    a.  ME Report 1 (Doc 1)

    b.  ME Report 2 Diagram (Doc 2)

    c.  Certificate of Death

    d.  ME Investigation, Autopsy, and Tox Reports

11. Armor v. Board of County Commissioners of OK County Docs

    a.  OK County Answer to Petition

    b.  Assignment of Judgement

    c.  Journal Entry of Judgement

    d.  Supreme Court Opinion and Mandate

    e.  Petition

12. 'Nobody Came' To Help As Woman 24 Died In Jail Cellmate Says

13. Images

    a.  Medical Examiner Photos DSC_0181-0231 (Doc 4)

    b.  OCDC Photos IMG_8158-8195 (Doc 27)

14. Pott County Jail Videos (Doc 9)

    a.  Spray 1 (Doc 9)

    b.  Spray 2 (Doc 9)

    c.  Spray 3 (Doc 9)

    d.  Spray 4 (Doc 9)

    e.  Spray 5 (Doc 9)

    f.  Spray 6 (Doc 9)

    g.  Spray 7 (Doc 9)

    h.  Spray 8 (Doc 9)

    i.  Spray 9 (Doc 9)

    j.  Spray 10 (Doc 9)

    k.  Spray 11 (Doc 9)

    l.  Spray 12 (Doc 9)

    m.  Spray 13 (Doc 9)

15. Audio Interviews with Phillips Hall (Doc 13)

     a.  Interview Andras (Doc 13)

     b.  Interview Breshers (Doc 13)

     c.  Interview Darling (Doc 13)

     d.  Interview Wilkinson (Doc 13)

16. Audio Calls by Spray (Doc 38)

     a.  01_Inmate_405-221-6119_12-13-18_1333 (Doc 38)

     b.  02_Inmate_405-221-6119_12-13-18_1124 (Doc 38)

     c.  03_Inmate_405-221-6119_12-13-18_1104 (Doc 38)

     d.  04_Inmate_405-221-6119_12-13-18_1035 (Doc 38)

17. Audio Calls Relevant to Event (Doc 39)

     a.  01_Wilkinson_405-800-3159_12-16-18_1727 (Doc 39)

     b.  02_Mize_405-532-7533_12-16-18_1716 (Doc 39)

     c.  03_Inmate_405-713-2047_12-16-18_1658 (Doc 39)

     d.  04_Inmate_405-713-2047_12-16-18_1657 (Doc 39)

     e.  05_Inmate_405-713-2047_12-16-18_1656 (Doc 39)

     f.  06_Inmate_405-713-2047_12-16-18_1653 (Doc 39)

18. Other Videos

     a.  1 12-15-18 503pm Med Pass2  12-16-18 846am Pulled for med visit

     b.  2.1 12-16-18 846am Pulled for med visit4 12-16-18 1229pm Med Pass

     c.  2.2 12-16-18 846am Pulled for med visit

     d.  3.1 12-16-18 916am Returning from medical

     e.  3.2 12-16-18 916am Returning from medical

     f.  4 12-16-18 1229pm Med Pass

     g.  5.1 12-16-18 503pm Event

     h.  5.2 12-16-18 503pm Event

     i.  5.3 12-16-18 503Pm Event

     j.  5.4 12-16-18 503Pm Event