IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM RAY SPRAY, JR., and RHONDA JEAN SPRAY, individually and as Personal Representatives of the Estate of Sindi Lucille Spray, deceased, </br></br> Plaintiffs, </br></br> v. </br></br> BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, in its Official Capacity as Governing Body of the County of Oklahoma County, </br></br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   No. CIV-20-1252-R |

## ORDER

The following motions are pending before the Court: Defendant's Motion to Exclude Expert Opinion Testimony of Plaintiff's Expert Susan Lawrence, M.D. [Doc. No. 53]; Defendant's Motion to Exclude Expert Opinion Testimony of Plaintiffs' Expert Richard Lichten [Doc. No. 54]; Plaintiffs' *Daubert* Motion to Exclude Expert Testimony of Defendant's Proposed Expert Michael Quinn [Doc. No. 51]; and Plaintiffs' Motion to Exclude Expert Testimony of Defendant's Proposed Expert Ryan Herrington [Doc. No. 52]. Each motion is fully briefed and at issue [Doc. Nos. 62, 63, 72, 73, 83]. In light of the parties' submissions, the Court finds that a formal hearing is not necessary to resolve these motions.

1

## INTRODUCTION

This case arises from Ms. Spray's death while she was a pretrial detainee at the Oklahoma County Detention Center. Plaintiffs assert that Defendant maintains a policy or custom of failing to provide medical care and supervision at the jail that caused a deprivation of Ms. Spray's Fourteenth Amendment rights.

In support of this claim, Plaintiffs have identified Dr. Susan Lawrence as an expert witness who will provide testimony regarding the quality of medical care provided to Ms. Spray and whether the policies and customs at the jail reflected deliberate indifference to the medical needs of detainees. Plaintiffs have also identified Richard Lichten as an expert witness who will provide testimony regarding jail policies and procedures. Defendant has identified Dr. Ryan Herrington as an expert who will testify as to the medical care provided to Ms. Spray and Michael Quinn as a jail operations expert. The admissibility of each witness will be addressed in turn.

## STANDARD

Rule 702 governs the admissibility of expert testimony and "imposes upon the trial judge an important 'gate-keeping' function with regard to the admissibility of expert opinions." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). To determine whether an expert opinion is admissible pursuant to Rule 702, courts utilize a two-step analysis. *103 Invs. I, L.P. v. Square D Co.,* 470 F.3d 985, 990 (10th Cir. 2006). First, the Court determines "whether the expert is qualified by 'knowledge, skill, experience, training or education' to render an opinion." *Id.* (quoting Fed. R. Evid. 702). Second, if the expert is qualified, the Court determines whether the expert's opinion is

reliable under the principles set forth in *Daubert*[1] and *Kumho Tire*,[2] and relevant, in that it will assist the trier of fact. *Id.*; *see also Ralston*, 275 F.3d at 969; Fed. R. Evid. 702.

There are a number of factors that a trial court may consider in determining whether expert testimony is reliable, although the inquiry is necessarily "a flexible one" that is highly fact specific. *Daubert*, 509 U.S. at 594. Ultimately, its purpose "is always 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Goebel v. Denver & Rio Grande W. R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003) (quoting *Kumho Tire*, 526 U.S. at 152). Importantly, "the appropriate means of attacking shaky but admissible evidence" is not through exclusion, but through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. The proponent of expert testimony bears the burden of showing that the testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

## DISCUSSION

**A. Defendant's Motion to Exclude Dr. Lawrence's Testimony**

Dr. Lawrence is a medical doctor with a background in providing medical treatment at correctional facilities. Her report opines on the quality of medical care provided to Ms. Spray, whether the lack of care proximately caused her death, and whether the policies and customs at the jail reflected deliberate indifference to the medical needs of detainees. *See*

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).
[2] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

Report [Doc. No. 53-1] at 10. Defendant does not challenge Dr. Lawrence's qualifications but contends that her report is unreliable and contains inappropriate legal conclusions.

Although an expert witness may testify about an ultimate issue, an "expert may not state legal conclusions drawn by applying the law to the facts." *A.E. by & Evans v. Indep. Sch. Dist. No. 25, of Adair Cnty., Okl.*, 936 F.2d 472, 476 (10th Cir. 1991). In general, expert testimony that "provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge" is permissible, while testimony that supplants the jury's judgment is not. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015).

Dr. Lawrence's report consists largely of factual narrative followed by a conclusion that the County acted in ways that were "unconstitutional," "constitutionally inadequate," or in "conscious disregard" for detainees. These statements are legal conclusions that "circumvent[] the jury's decision-making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (excluding expert in § 1983 case that "developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights"); *see also Chrisman v. Bd. of Cnty. Commissioners of Oklahoma Cnty.*, No. CIV-17-1309-D, 2021 WL 5913718, at *5 (W.D. Okla. Sept. 30, 2021) (ruling that expert's opinion that defendants were guilty of deliberate indifference "draws a legal conclusion, is inappropriate, and is thus inadmissible"); *DuBois v. The Bd. of Cnty. Commissioners of Mayes Cnty.*, No. 12-CV-677, 2016 WL 907971, at *4 (N.D. Okla. Mar. 9, 2016) (ruling that "it is improper for an expert to opine that a jail's actions or inactions constitute 'deliberate indifference'"). Accordingly, these statements are inadmissible.

Defendant further argues that Dr. Lawrence's report should be excluded because her underlying medical opinions are grounded in negligence, which is irrelevant to the deliberate indifference standard that applies in this case. The Court does not agree with Defendant's characterization of Dr. Lawrence's opinions. Her report opines that Defendant failed to provide appropriate medical care to Ms. Spray despite knowing that she had a serious medical need. Report at 21, ¶ F. As support for this opinion, the report identifies certain ways the jail personnel either entirely failed to perform their duties or failed to respond appropriately in light of the knowledge they had regarding her symptoms. *Id.* at 21-25, ¶¶ F(2)-(7); H(1).[3] Expert testimony regarding the severity of Ms. Spray's symptoms and the appropriate response to those symptoms will assist the jury in determining whether jail medical personnel acted in conscious disregard to a serious medical need, a key issue in this case. Additionally, these particular opinions are supported by an adequate factual basis and are sufficiently grounded in Dr. Lawrence's experience as a medical doctor.

---

[3] In paragraph H(1) of her report, Dr. Lawrence opines that the County failed to adequately investigate Ms. Spray's death, "representing an extreme deviation from constitutionally adequate conditions." The relevance of the County's failure to adequately investigate Ms. Spray's death is not immediately apparent nor is it clear that Dr. Lawrence is qualified to render an opinion as to the adequacy of a law enforcement investigation. However, the body of this portion of the report is essentially an explanation of why the medical information relied on by the law enforcement investigator is incorrect. This does fall within Dr. Lawrence's area of expertise and, if the police investigatory report is admitted, her testimony as to why these medical conclusions are inaccurate may be admissible. Further, this section of the report contains additional reasoning in support of her conclusion that Ms. Spray had a serious medical need that should have been recognized by jail personnel. Accordingly, the Court is not persuaded that the exclusion of these sections of Dr. Lawrence's report is warranted.

There are, however, a number of opinions in Dr. Lawrence's report that must be excluded because they are either unreliable, unhelpful, or outside the scope of her expertise. First, many of her opinions will not be helpful to the jury because they do not involve the application of scientific, technical, or specialized knowledge. *See* Fed. R. Evid. 702(a) (providing that an expert may testify if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"). For example, Dr. Lawrence opines that Defendant failed to ensure Ms. Spray had timely access to care through written sick call requests. Report at ¶¶ E(1), G(1). The basis of this opinion is simply that jail personnel testified that nurses would ignore sick call requests. She does not bring any medical expertise to bear on this evidence. The jury does not need expert medical testimony to understand or evaluate this evidence and this opinion is therefore excluded.[4] *Nowlin v. City of Oklahoma City*, No. CIV-17-194-PRW, 2020 WL 6374772, at *1 (W.D. Okla. Apr. 9, 2020) (excluding expert testimony that did "not offer scientific, technical, or other specialized knowledge to help resolve a fact in dispute"); *Threet v. Corr. Health Care Mgmt. of Oklahoma, Inc.*, No. CIV-07-0943-HE, 2009 WL 3335596, at *3 (W.D. Okla. Oct. 15, 2009) (excluding opinions because they were "essentially factual matters as to which expert testimony is inappropriate and/or unnecessary").

---

[4] Dr. Lawrence also frequently opines that the failures she identifies are in violation of a 2009 Memorandum of Understanding between Oklahoma County and the Department of Justice. However, assuming the MOU is admissible, the jury is equally capable of reviewing the document and determining, based on the evidence, whether the County complied with the MOU and whether a failure to comply is evidence of deliberate indifference.

Second, Dr. Lawrence offers opinions about the adequacy of jail's staffing levels that are outside of the scope of her qualifications. Report at 14, ¶¶ A, B. Although Dr. Lawrence has experience providing medical services in correctional facilities, she is not qualified to render opinions about jail policies and procedures outside the medical context.

Third, some of the opinions are unreliable because they lack an adequate factual basis. *See Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1519 (10th Cir. 1995) (explaining that an expert opinion "must be based on facts which enable her to express a reasonably accurate conclusion as opposed to conjecture or speculation") (quotation marks and brackets omitted). Dr. Lawrence opines that the jail failed to provide training on medical policies or how to deal with emergency situations. Report at 18, ¶ D. The basis of this opinion is statements from two detention officers about their lack of training. The report does not, however, indicate that Dr. Lawrence reviewed or is familiar with the actual training or policies of the jail. Dr. Lawrence goes on to opine that the County failed to provide sufficient levels of qualified medical staff. Report at 18, ¶ C. For this opinion, she relies on a lawsuit involving a previous medical provider at the jail and a letter from the current jail provider postdating the events in this lawsuit. She does not, however, cite to any facts showing the actual number of medical providers employed during or preceding this incident. Having failed to identify any facts related to the actual training or staffing levels of the jail, it follows that her opinions as to the adequacy of the jail's training and staffing levels are not reliable.

Dr. Lawrence's report also inappropriately weighs in on the credibility of a witness. After concluding that a nurse's failure to promptly document her visit with Ms. Spray was

inappropriate, she opines that the nurse may have been rushed and that the stress of participating in the unsuccessful resuscitation of Ms. Spray may have affected the nurse's recall and description of prior events. Although the jury may consider these factors in assessing the credibility of the nurse, it is not appropriate for an expert witness to make these credibility assessments. *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993) ("The credibility of witnesses is generally not an appropriate subject for expert testimony.").

Accordingly, as set out above, Dr. Lawrence's expert testimony is limited to her opinions concerning the quality of medical care provided to Ms. Spray.

### B. Defendant's Motion to Exclude Richard Lichten

Mr. Lichten is a retired police officer who now works as a police practices expert. Broadly speaking, his report opines on whether the procedures at the jail and the jail personnel's actions were appropriate. Defendant challenges both Mr. Lichten's qualifications to opine as to jail procedures and the reliability of his opinions.

#### 1. Qualifications

Mr. Lichten's report and curriculum vitae indicate that he has considerable experience with jail management. In addition to his nearly twenty years of experience working in jails as a deputy, sergeant, and then lieutenant, he has attended training regarding jail management, jail security, and how to perform jail policies/procedures; he has authored publications concerning prevention of suicides in jails; and he has lectured

about various jail issues. The Court is persuaded that Mr. Lichten's experience in jail management renders him qualified to offer opinions as to jail policies and procedures.[5]

### 2. Reliability

Defendant argues that Mr. Lichten's opinions are inadmissible because he has not specifically identified the jail procedures relied on in formulating his opinions. Defendant therefore contends that Mr. Lichten's methodology is unreliable.

Qualified expert testimony is reliable, and therefore admissible, when it is "based on sufficient facts or data," it is "the product of reliable principles and methods," and "the expert has reliably applied [those] principles and methods." Fed. R. Evid. 702. In some situations, an expert's use of their "personal experience, training, method of observation, and deductive reasoning" may be "sufficiently reliable to constitute 'scientifically valid' methodology." *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2005).

Mr. Lichten opines that failing to properly conduct a site check or accurately log a site check is inconsistent with acceptable corrections practices and that the jail's policy concerning response to medical emergencies is deficient. *See* Report [Doc. No. 54-1] at Nos. 4, 5, 6. Mr. Lichten's report and testimony indicate that he reached these conclusions by considering his firsthand experience working in jails, his training on jail procedures, and his review of procedures from jails throughout the country. His report also outlines the facts he relies on in reaching his opinions. Report at 7-9, 3-32, 38-39; Deposition of Lichten

---

[5] Defendant additionally argues that Mr. Lichten is not qualified to offer medical opinions. Neither Mr. Lichten's report nor Plaintiff's response brief suggest that he intends to offer expert medical opinions.

[Doc. No. 73-1] at 99:22-102:21. Although the basis of these opinions is somewhat sparse, the Court finds that they are sufficient to satisfy Rule 702's reliability standards. *See Mayfield v. City of Edmond, No.* CIV-08-0825-HE, 2010 WL 11610610, at *2 (W.D. Okla. Feb. 17, 2010) (finding that the expert opinion as to adequacy of police training program reliable even though expert did not identify a particular standard). Additionally, Mr. Lichten's testimony concerning proper procedures for monitoring inmates or responding to emergency situations in jails is not a subject with which the average juror is likely to be familiar and his testimony on these topics will therefore be helpful to the jury.

The same cannot be said for his remaining opinions. Opinions Nos. 1, 2,[6] 3,[7] 7, 8, and 10 do not involve the application of scientific, technical, or other specialized knowledge such that expert testimony would be helpful to the jury. By way of example, one does not need to be a jail procedures expert to discern that a detention officer could have responded more quickly had an officer been actively supervising the area where Ms. Spray's cell was located.

Opinion No. 9 is also unhelpful because it offers an inappropriate legal conclusion. Here, Mr. Lichten opines that detention officers acted in conscious disregard of Ms. Spray's serious medical need when they failed to summon medical care. As previously explained, opinions that Defendant acted with deliberate indifference are not the appropriate subject of expert testimony.

---

[6] To the extent his opinion strays into the territory of medical diagnosis, it would also fall outside the scope of Mr. Lichten's expertise.

[7] This opinion also impermissibly weighs in on the credibility of a witness.

10

Mr. Lichten's final opinion, No. 11, is that "the things that occurred in this case are reflective of policies, procedures, customs, habits, and protocols that are dangerous to the safety and welfare of inmates." This opinion is followed by a synopsis of the incident and various conclusions that are consistent with the more specific opinions previously set out in the report. The Court is not persuaded that this general statement is helpful or reliable without specific identification of the "things" that reflect policies that are dangerous to inmates. Accordingly, Mr. Lichten may offer this opinion to the extent he is relying on the deficient practices identified in his opinions that have been found admissible.

As set out above, opinion Nos. 1-3 and 7-10 of Mr. Lichten's report are excluded.

### C. Plaintiffs' Motion to Exclude Dr. Herrington's Testimony

Dr. Harrington is a medical doctor who opines on the quality of medical care provided to Ms. Spray during her period of incarceration. Plaintiffs challenge Dr. Herrington's qualifications to opine on this subject and raise several challenges to the reliability of his opinions.

#### 1. Qualifications

Dr. Herrington is board certified in addiction medicine and preventive medicine and has years of experience providing medical care at correctional facilities. Plaintiffs take issue with his qualifications, and specifically the fact that he is not board certified in internal medicine, family medicine, or gastroenterology. Although "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue," *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001), the Court is persuaded that Dr. Herrington's medical training and extensive

11

experience providing medical care at correctional facilities renders him qualified to offer opinions as to the medical care provided in this case.

2. **Reliability**

Plaintiffs additionally argue that Dr. Herrington's report is unreliable because he failed to utilize a generally accepted methodology in formulating his opinions. More specifically, Plaintiffs note that Dr. Herrington's report articulates a definition of the standard of care that he made up and utilizes a series of "tests" to analyze an adverse event that have not been the subject of peer review or evaluation.

With respect to the standard of care, Dr. Herrington's deposition testimony made clear that he understood the appropriate standard of care and that the standards he articulated in his report are consistent with his training and experience as a physician. Depo of Herrington [Doc. Nos. 52-5 and 63-1] at 79:9-17; 124:6-125. With respect to the "tests" Dr. Herrington utilized, these are derived from a publication issued by the National Health Service for the purpose of providing a fair and consistent course of action toward patient safety incidents. Sandra Meadows, et al., The Incident Decision Tree: Guidelines for Action Following Patient Safety Incidents, https://www.ncbi.nlm.nih.gov/books/NBK20586/ (last visited Aug. 9, 2023). This article was included in a peer reviewed publication issued by the Agency for Healthcare Research and Quality. Agency for Healthcare Research and Quality, Advances in Patient Safety, https://www.ahrq.gov/patient-safety/reports/advances/index.html (last visited Aug. 9, 2023). The "tests" Dr. Herrington used are actually a series of questions related to whether health care providers deviated from the standard of care. Report at 11. Dr. Herrington testified that he first learned of this

methodology during his employment at a correctional facility and found it to be a well-organized and logical way to analyze an adverse event. Depo of Herrington at 75:7-22. Dr. Herrington describes the tests as "organizing how an expert would arrive at a conclusion" and believes that an expert would naturally go through a similar process. *Id*. In addition to utilizing these tests to formulate his opinions, Dr. Herrington applied his medical expertise and training. Report at 12-13; Depo of Herrington at 78:4-9. Given Dr. Herrington's explanation as to how he utilized the tests and the questions the tests prompted, the Court is persuaded that Dr. Herrington utilized a reliable and generally accepted methodology to reach his conclusions.

Plaintiffs further argue that Dr. Herrington's report is inadmissible because he failed to review all the evidence, including depositions of several key witnesses. The Court finds Dr. Herrington's failure to review the testimony of the medical personnel and detention officers who actually treated and observed Ms. Spray troubling given that he was retained to assess the medical care provided to her. However, based on his addendum to his report, it is apparent that Dr. Herrington is aware of these witness statements and does not believe they would change his opinion. Accordingly, the Court finds that this issue, as well as any inaccuracies in the report, are more appropriately addressed through vigorous cross examination.

### D. Plaintiffs' Motion to Exclude Mr. Quinn

Mr. Quinn is a law enforcement officer with significant experience in jail operations. Plaintiffs do not challenge his qualifications to render an opinion on jail policies

and procedures but contend that his report is unreliable. The Court agrees that Mr. Quinn's report falls short of the standards articulated in *Daubert* and Rule 702.

To begin, Mr. Quinn opines that the actions of jail personnel and Defendant were "within constitutional parameters," did not deprive Ms. Spray of her "due process rights," or were not "deliberately indifferent." *See* Report [Doc. No. 51-1] at 9, 10, 12. As previously explained, these legal conclusions are inappropriate and inadmissible. The report also references Eighth Amendment standards that are not relevant to this case. *Id.* at 8-9, 12.

Mr. Quinn further opines that there is "no evidence" to support an allegation that detention officers knew Ms. Spray had a serious medical need. *Id.* at 9. Putting aside the fact that there is evidence that detention officers knew (or should have known) that Ms. Spray was suffering a serious medical need, statements such as these "are not ordinarily proper expert testimony." *Richardson v. Watco Companies, Inc.*, No. CIV-10-0047-HE, 2011 WL 12842517, at *4 (W.D. Okla. Apr. 29, 2011) (excluding opinions that "'there is no evidence' as to a particular fact"); *see also Prima Partners, LLC v. Waterhouse*, No. 16-CV-02875, 2018 WL 2091075, at *3 (D. Colo. May 3, 2018) (excluding opinion that expert "has seen no evidence" of an element because "the jury does not need expert testimony to determine whether evidence exists and whether it demonstrates a party's knowledge").

Mr. Quinn goes on to opine that the detention officers receive training consistent with state standards and the jail was "staffed with well-trained personnel." Report at 10-12. However, he conceded at his deposition that this opinion is based on what state law

requires and he has not actually reviewed any of the jail's training curriculum or training records. Deposition of Quinn [Doc. No. 51-2] at 58:18-59:23; 89:12-20. Given Mr. Quinn's lack of familiarity with the actual training provided to jail staff, his opinion as to the jail's training lacks a reliable factual basis and is inadmissible.

Mr. Quinn also offers several opinions that are conclusory and lacking in adequate explanation or reasoning. He opines that Defendant has "reasonable management and supervisory controls" to encourage compliance with standards as well as policies that were consistent with professional standards. Mr. Quinn does not, however, identify any specific "controls" or policies that are relevant to this case nor does he explain why those policies are satisfactory. His general and conclusory opinion that the jail has acceptable controls and policies in place lacks a reliable basis and would not be helpful to the jury. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 144, (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Threet v. Corr. Health Care Mgmt. of Oklahoma, Inc.,* No. CIV-07-0943-HE, 2009 WL 3335596, at *5 (W.D. Okla. Oct. 15, 2009) ("It is fundamental that, if the basis for an expert's opinions is to be tested for reliability, that basis must be identified in some fashion.").

Last, Mr. Quinn opines that jail employees had no knowledge of a serious medical need and did not fail to provide access to medical care. Although not entirely clear from his report, this opinion appears to be based on the fact that Ms. Spray received a medical evaluation during her intake and was assessed at various times by medical staff. Report at 7, 9-10. Mr. Quinn does not appear to be bringing any specialized knowledge to bear on

this evidence. The jury is capable reaching its own conclusion on these issues after hearing the evidence.

In light of these deficiencies, the Court concludes that Mr. Quinn's report is not sufficiently reliable or relevant and must be excluded.

## CONCLUSION

As outlined above, Defendant's Motion to Exclude Expert Opinion Testimony of Plaintiff's Expert Susan Lawrence, M.D. [Doc. No. 53] is GRANTED in part and DENIED in part; Defendant's Motion to Exclude Expert Opinion Testimony of Plaintiffs' Expert Richard Lichten [Doc. No. 54] is GRANTED in part and DENIED in part; Plaintiffs' Daubert Motion to Exclude Expert Testimony of Defendant's Proposed Expert Michael Quinn [Doc. No. 51] is GRANTED; and Plaintiffs' Motion to Exclude Expert Testimony of Defendant's Proposed Expert Ryan Herrington [Doc. No. 52] is DENIED.

IT IS SO ORDERED this 23rd day of August 2023.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE