1              IN THE UNITED STATES DISTRICT COURT

2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4

5                                          )
    MICHELLE MORIARTY, an                  )
6   individual, As Successor in            )
    Interest to the Estate of HERON        )
7   MORIARTY and as Guardian Ad            )   No. 17-cv-1154LAB(AGS)
    Litem to ALEXANDRIA MORIARTY,          )
8   ELIJAH MORIARTY and ETERNITY           )
    MORIARTY,                              )
9                                          )
             Plaintiffs,                   )
10                                         )
        vs.                                )
11                                         )
    COUNTY OF SAN DIEGO, DR. ALFRED        )
12  JOSHUA, individually, and DOES 1       )
    through 10, Inclusive,                 )
13                                         )
             Defendants.                   )
14  _____)

15

16

17

18             DEPOSITION OF RICHARD LICHTEN

19               WOODLAND HILLS, CALIFORNIA

20                    JANUARY 9, 2019

21                10:08 A.M. - 1:54 P.M.

22

23

24

25  REPORTED BY LISA BLACK, CSR NO. 7977

EXHIBIT C

```
 1   reached Section 265 on Page 60 -- if you want to turn to
 2   that.
 3        Q    All right.
 4        A    -- I realized that that should be added as a
 5   main opinion.  Even though I explained it in my report,
 6   I figured it's -- I thought it would be best to do it
 7   that way.  And that's why I did that.
 8        Q    When did you add that as Opinion 12?
 9        A    Just the other day when I was reading over my
10   report.  I mean, the opinion was in the report and I
11   would have brought it up anyway.  I just wanted to make
12   sure I listed it on the front.
13        Q    Have you received any information regarding
14   deposition testimony of Lieutenant Ruby Banks?
15        A    No, I have not received her deposition yet.
16        Q    In Page 2 of your report in the introduction
17   section you say, "I'm a 30-year law enforcement veteran.
18   Twenty of my 30 years were in supervisor and management
19   positions."
20             When you retired from law enforcement, what was
21   your position?
22        A    I was a watch commander as a lieutenant.
23        Q    What was the facility where you were serving as
24   a watch commander?
25        A    It's called the North County Correctional
```

EXHIBIT C

1  Facility Jail in Castaic, which is about ten minutes
2  north of Valencia, with an inmate count of about 4,000
3  inmates.
4      Q   And so as the lieutenant and watch commander at
5  that facility, when you were on duty, what was the
6  hierarchy there?  Who was above you?
7      A   Well, there is -- there is -- depending on the
8  time of day, there would be a captain.  Captain is
9  always above me.  And there is ranks above him.  But at
10 any one time as the watch commander I was the highest
11 ranking person in the back, so to speak.
12          And there was also several times where I was
13 watch commander of two facilities at the same time due
14 to staffing issues, so...
15     Q   When you say highest ranking person in the
16 back, what does in the back mean?
17     A   What's called -- that's slang.  I'm sorry.
18 It's through security when you pass through the doors
19 and you're actually in amongst the inmates.  The captain
20 would be out in front in the administrative area.  And
21 that's Monday through Friday 8:00 to 5:00 kind of thing,
22 so...
23     Q   So of the personnel actually in the secure
24 portion of the jail, you were the highest ranking person
25 when you were on duty?

```
1    specifically has those types of cells.  And now it's a
2    suicide watch type thing with the mental health.
3           Mental health providers of course came to the
4    jails that I worked at and treated inmates.  But once
5    somebody was determined or deemed suicidal, even in a
6    feigned suicide, they would be sent Downtown for
7    evaluation by competent mental health experts.
8       Q   So someone with suicidal ideation would be
9    taken out of your facility and taken to a Downtown
10   facility?
11      A   Yes.
12      Q   How long did you work at the Castaic Lake jail
13   facility?
14      A   Well, as a lieutenant, I was there -- I don't
15   know.  It's in my C.V.  I forget.  I want to say seven
16   years.  And then I was there as a sergeant working
17   another, what, I guess, three or four -- four years.
18           Then I worked other jails as a deputy.  I mean,
19   I can't recall right now.  But it's in my C.V.  A number
20   of years.  These are big jails.
21      Q   When you were on duty at that jail as the
22   lieutenant and watch commander, you were responsible for
23   what areas of the jail?
24      A   All of it.  When you're the watch commander,
25   you're responsible.  I mean, it's -- the buck stops with
```

1  you.
2  Q  Did you wear a uniform in that position?
3  A  Yes.
4  Q  Did you have a role in training sworn staff
5  when you were working as the lieutenant and watch
6  commander?
7  A  Sure.
8  Q  You retired from that job in 2008, correct?
9  A  Yes.
10 Q  And you retired when you were found
11 masturbating in the workplace, correct?
12 A  That's why I retired, in lieu of an
13 investigation.
14 Q  And while you were masturbating in the
15 workplace, you were on duty?
16 A  Yes.
17 Q  You were masturbating in the office where a
18 female secretary worked?
19 A  Yes.  She was not in the facility.  Yes.
20 Q  You left your semen in the secretary's work
21 area?
22 A  That was the allegation.  The answer is yes.
23 Q  And then the woman came in earlier unexpectedly
24 and saw that you were in her work area, right?
25 A  Correct.

```
1        Q    And you lied to her and said you were in there
2   to use a phone?
3        A    Right.  I said it was a spur of the moment
4   comment.  To save her and me embarrassment, I said I was
5   on the phone.
6        Q    And that was not true?
7        A    Yeah.  It was a spur of the moment comment to
8   save her and me embarrassment.
9        Q    You were not there to use the phone; you were
10  there to masturbate and leave semen in that woman's work
11  area, correct?
12            MR. MORRIS:  Now that's argumentative,
13  harassing and asked and answered.  I'll instruct him not
14  to answer that question.
15  BY MR. WELSH:
16       Q    Are you going to follow his instruction?
17       A    Yes.
18       Q    Why were you masturbating in that woman's work
19  area?
20            MR. MORRIS:  Come on, Chris.  We have gone
21  through this for 25 minutes last time with him.  This
22  has never been in evidence in any of the 250 cases he's
23  been retained on, in any of the ten cases I have
24  retained him on.  I'll allow some limited questions.  I
25  mean --
```

EXHIBIT C

```
 1              MR. WELSH:  I have a bunch of questions and --
 2              MR. MORRIS:  I mean, I'll allow some of it, but
 3    I mean, this is -- asking him why he was masturbating is
 4    harassing and it's not designated or likely to produce
 5    any discoverable evidence.  But I'll allow some limited
 6    questions.  But I mean if you want to spend an hour on
 7    this, unless you're Clarence Darrow, it's never going to
 8    see the light of day.
 9    BY MR. WELSH:
10         Q    Why were you masturbating in that woman's work
11    area?
12         A    Because I felt like it.
13         Q    Were you married?
14         A    Yes.
15         Q    Was she married?
16         A    At the time I'm not sure if she was or if she
17    was widowed.  I forget.
18         Q    Did you have some sort of relationship or
19    dating with her?
20         A    No.  We were friendly.  We did not date.
21         Q    She did not consent to you masturbating in her
22    work area, did she?
23         A    No.
24         Q    Was part of your reason for doing that to make
25    her feel bad?
```

Richard Lichten  1/9/2019

1   A   No.
2   Q   You were trying not to get caught, weren't you?
3   A   The idea wasn't to let anybody know.
4   Q   You knew it was wrong to masturbate in the
5   workplace of a woman employee where you were the
6   lieutenant?
7   A   Of course.
8   Q   And watch commander?
9   A   Of course.
10  Q   Did you consider it unethical workplace
11  performance to masturbate in the work area of a woman
12  who was working at the jail?
13          MR. MORRIS:  That calls for a legal conclusion.
14  Calls for a legal opinion.  Calls for an expert opinion
15  outside his expertise.
16          THE WITNESS:  It was wrong of me to do it.
17  BY MR. WELSH:
18  Q   Did you know that that was harassment?
19          MR. MORRIS:  Calls for a legal opinion.  Calls
20  for a legal conclusion.  Argumentative and misstates
21  harassment.
22          THE WITNESS:  It was wrong for me to do it.  I
23  should not have done it.
24  BY MR. WELSH:
25  Q   At the time when you were masturbating in this

EXHIBIT C

Richard Lichten  1/9/2019

```
 1   jail.
 2       Q    Who was your supervisor that addressed this
 3   issue with you?
 4       A    Captain -- it will come to me in a second.  I'm
 5   drawing a blank.  My captain.
 6       Q    Your captain who was discussing this situation
 7   with you informed you that they had found semen in the
 8   secretary's work area, correct?
 9       A    Well, it wasn't a discussion.  He told me not
10   to say anything.  It was a one-sided discussion.
11       Q    All right.  But part of what he said then was
12   we have found semen in the secretary's work area?
13       A    I recall that, yes.
14       Q    And did he say they found it on the desk or the
15   chair or the floor?
16       A    I don't recall that.
17       Q    The captain told you that you needed to resign
18   from employment otherwise you would face an
19   investigation into this?
20       A    No.  That's not what happened.  The chief did.
21       Q    What was the chief's name?
22       A    Dennis Burns.
23       Q    What was he the chief of?
24       A    It was called Custody Division.
25       Q    And so the chief that was over you as a
```

EXHIBIT C

Richard Lichten  1/9/2019

```
 1   supervisor told you that you needed to resign from
 2   employment otherwise you would face an investigation?
 3        A    He said it would be best -- or words to the
 4   effect of just go down and retire and there would be no
 5   investigation.   So I did that.
 6        Q    Your chief told you that you would be fired,
 7   didn't he?
 8        A    He said if it went to an investigation I would
 9   be fired.   The fact of the matter is I retired full
10   retirement and there was no discipline.
11        Q    You left employment because you had committed
12   intentional misconduct on the job, correct?
13             MR. MORRIS:   Misstates evidence.   Calls for a
14   legal opinion and legal conclusion with respect to
15   intentional misconduct.
16             THE WITNESS:   It was wrong of me to do that.
17   BY MR. WELSH:
18        Q    Then you lied about what you had done, didn't
19   you?
20             MR. MORRIS:   Misstates evidence.
21   Argumentative.
22             THE WITNESS:   I gave testimony in a deposition.
23   I did not lie.
24   BY MR. WELSH:
25        Q    Did you lie to your wife when you told her why
```

EXHIBIT C

Richard Lichten  1/9/2019

1    **a woman's work area"?**

2       A   I mean, my wife obviously knows.  And I tell

3    every lawyer that hires me.  And that stuff gets around,

4    so I'm sure people know.

5       **Q   Part of your basis for serving as an expert**

6    **witness in this case is your years of law enforcement**

7    **experience, correct?**

8       A   Part of it, yes.

9       **Q   Part of your basis for being an expert is years**

10   **of good service in your career, correct?**

11      A   My decades in police work and custody work,

12   yes, as well as all of my other training that I have had

13   since retiring.

14      **Q   And as part of your basis for being an expert,**

15   **you're holding out your performance on the job saying**

16   **you were good at your job, correct?**

17      A   My duties, my performance on the job, I

18   thought, was -- over 30 years I thought was excellent.

19   I handled many different situations.  Helped a lot of

20   people, saved a lot of lives.  You know, aside from this

21   instance that you're talking about, I'm proud of the

22   work that I did.

23      **Q   ==It was more than one instance that you were==**

24   **==masturbating in this woman's work area at the jail==**

25   **==facility, correct?==**

EXHIBIT C

Case 3:15-cv-05290-JCS Case 3:20-cv-01252-RS Document 209 Filed 09/07/23 Page 129 of 152 Document 193 Filed 09/08/23 Page 52 of 74

Richard Lichten  1/9/2019

1  A  Yes.

2  Q  I'm going to ask you to confirm that this was

3  testimony that you gave in the case called Moriadian

4  versus City of Glendale or it looks like trial

5  testimony.

6      I'm looking at -- we'll mark this as Exhibit 3.

7      (Defendants' Exhibit 3 marked

8      for identification by the Certified

9      Shorthand Reporter and is attached

10     hereto.)

11  BY MR. WELSH:

12  Q  I'll refer you to Page 41, Line 13.

13  MR. MORRIS:  Do you have a copy for me?

14  MR. WELSH:  I do not.

15  Q  Can you confirm -- the testimony is:

16  "Question, isn't it true that your chief called you in

17  and told you that if you did not retire and there was an

18  investigation or if the matter went to a full

19  investigation, you would be fired?"

20      And your answer was, "He said something about

21  that, yes.  And he assured me there would be no

22  investigation, but you are correct."

23      That was your testimony, sir?

24  A  That's what -- yes.  From what I recall, that's

25  what I told you here.

EXHIBIT C

Richard Lichten  1/9/2019

1      Q    And then the question is:  "Didn't he indicate
2   to you that there had been some inquiry that led him to
3   be confident in the fact that if you did not retire you
4   would be fired?"
5           And then down below there is an objection.  And
6   then the answer is, "I don't recall that part, and, you
7   know, I stand by what I said.  He said, 'Look, if you
8   don't retire, you know, if this goes to investigation,
9   you'll be fired.'  And that's what I remember."
10     A    Yes.
11     Q    That was your testimony?
12     A    Yes.
13          MR. WELSH:  I'm going to mark as Exhibit 4 a
14  set of Requests for Admissions from a case called Susan
15  Barden, B-a-r-d-e-n, versus Los Angeles County and
16  Richard Lichten.
17          (Defendants' Exhibit 4 marked
18           for identification by the Certified
19           Shorthand Reporter and is attached
20           hereto.)
21  BY MR. WELSH:
22     Q    Can you check the verification page of that
23  exhibit and confirm that that's your signature?
24     A    Yeah.  Wait.  Verification page?  Oh, yes.
25     Q    Request No. 1 is "Admit that you in were an

Richard Lichten  1/9/2019

1   office designated to the Plaintiff on February 21,

2   2008."

3           And you admitted that, correct?

4       A   Yes.

5       Q   Request No. 2 is, "Admit that Plaintiff was

6   aware you were in the office designated to you on

7   February 21, 2008."

8           And you say, "Defendant admits that at some

9   point while Defendant was in the office on February 21,

10  2008 Plaintiff entered the office," correct?

11      A   Yes.

12      Q   Request No. 3, "Admit that you told Plaintiff

13  you were in the office designated to her on February 21,

14  2008 because you were using the telephone."

15          And you admitted that, correct?

16      A   Yes.

17      Q   Request No. 4, "Admit that you did not make a

18  telephone call while in an office designated to the

19  Plaintiff on February 21, 2008."

20          And you admitted that, correct?

21      A   Yes, sir.

22      Q   Request No. 5 is:  "Admit that you did not

23  receive a telephone call while you were in an office

24  designated to the Plaintiff on February 21, 2008."

25          You admitted that?

EXHIBIT C

| | | |
|---|---|---|
| 1 | A | Yes. |
| 2 | Q | Request No. 6 is you exited an office designated to the Plaintiff after she became aware that you were in that office. |
| 5 | | And you admitted that, correct? |
| 6 | A | Yes. |
| 7 | Q | Request No. 7 says that "Admit that you masturbated in an office designated to the plaintiff on February 1, 2008." |
| 10 | | And you admitted that? |
| 11 | A | Yes. |
| 12 | Q | Request No. 8 is "Admit that --" Request No. 8 is, "Admit that you masturbated in an office designated to the Plaintiff on one more occasion." |
| 15 | | And you admitted that? |
| 16 | A | Yes. |
| 17 | Q | No. 11 is "Admit that you were confronted by your employer concerning an incident on February 21, 2008 where your semen was discovered in an office designated to the Plaintiff." |
| 21 | | And your response was admit? |
| 22 | A | Yes. |
| 23 | Q | No. 12 is "Admit that you were confronted by Sergeant Randy Lawrence concerning an incident on February 21, 2008 where your semen was discovered in an |

Richard Lichten  1/9/2019

1   office designated to the plaintiff."
2           And in that one you said deny.
3       A   That's correct.
4       Q   Was it not Sergeant Randy Lawrence, instead it
5   was the chief?
6       A   No.  It was the captain.
7       Q   Do you remember the captain's name now?
8       A   I do now.  Greg, G-r-e-g, Johnson.
9       Q   So is it correct that you were confronted by
10  Captain Greg Johnson concerning an incident on
11  February 21, 2008 where your semen was discovered in an
12  office designated to the plaintiff?
13      A   Yes.
14      Q   Thank you.  You were sued by Susan Barden?
15      A   Yes.
16      Q   Money was paid on your behalf to settle that
17  lawsuit?
18      A   There was a confidential settlement between me
19  and her to make it go away.
20      Q   Your employer, L.A. County, was also sued in
21  that case?
22      A   Yes.
23      Q   After you retired because you were caught
24  masturbating in a woman's work area at your workplace,
25  you offered yourself out as an expert on the issue of

EXHIBIT C

Richard Lichten  1/9/2019

```
 1    this issue.  I generally don't read them.
 2              MR. WELSH:  I'll mark as Exhibit 6 a copy of
 3    the Motion in Limine filed in the Curry, C-u-r-r-y, case
 4    regarding Mr. Lichten by Chris Morris and Danielle Pena.
 5              (Defendants' Exhibit 6 marked
 6               for identification by the Certified
 7               Shorthand Reporter and is attached
 8               hereto.)
 9    BY MR. WELSH:
10        Q    Mr. Lichten, if you look at Page 6.
11        A    I'm on Page 6.
12        Q    Page 4 says, "Lichten retired from the L.A.
13    Sheriff's Department in February of 2008 and took a
14    normal retirement.  However, at the time of his
15    retirement, a civilian employee of the Sheriff's
16    Department had accused him of engaging in an improper
17    relationship with her."
18              Do you agree that that is a fair
19    characterization of what happened, that you were accused
20    having an improper relationship with her?
21              MR. MORRIS:  For the record, you're asking
22    Mr. Lichten about a Motion that was drafted by me and
23    Ms. Pena that he did not review, sign off or agree to at
24    the time of the signing.  So it's improper impeachment.
25              But you can answer the question as to whether
```

EXHIBIT C

Richard Lichten  1/9/2019

1  or not it was a fair characterization.
2           Calls for speculation and vague and ambiguous
3  as to the term relationship.
4           THE WITNESS:  My answer is, yeah, that was
5  written by the lawyer.  That's what the lawyer called
6  it.
7           I have already provided you testimony, my
8  answer about, you know, whether or not there was a
9  relationship.  You seem to be stuck on the relationship
10 issue.
11          I told you we weren't dating or anything like
12 that, so I don't know what else to tell you.
13          The lawyer wrote that up.  And I have had many
14 Motion in Limines that have all been granted.  They say
15 different things sometimes.  All basically revolve
16 around the same issue, so -- and obviously you know
17 that.
18 BY MR. WELSH:
19     Q   Here it says you were accused of engaging in an
20 improper relationship with her.
21          I would like to know if you agree with that or
22 if you think that's a misrepresentation of the
23 situation?
24          MR. MORRIS:  Asked and answered.
25          THE WITNESS:  Well --

EXHIBIT C

Richard Lichten  1/9/2019

```
1                  C E R T I F I C A T E
2
3    I, LISA B. BLACK, Certified Shorthand Reporter for the
4    State of California do hereby certify:
5
6    That the witness in the foregoing deposition was by me
7    first duly sworn to testify to the truth, the whole
8    truth and nothing but the truth in the foregoing cause;
9    that the deposition was taken by me in machine shorthand
10   and later transcribed into typewriting, under my
11   direction, and that the foregoing contains a true record
12   of the testimony of the witness.
13
14   Dated:  This 15th day of January, 2019,
15   Thousand Oaks, California.
16
17
18
19                        _____
20                             LISA B. BLACK
21                            C.S.R. NO. 7977
22
23
24
25
```

Peterson Reporting Video & Litigation Services     172

EXHIBIT C